Olive D. **GRIGGS**, Plaintiff,

v.

**COCA–COLA EMPLOYEES' CREDIT UNION,** Defendant.

No. 1:94–CV–110.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Dec. 21, 1995.

Anita B. Hardeman, Brown, Dobson, Burnette & Kesler, Chattanooga, TN, for plaintiff.

Ronald G. Ingham, Miller & Martin, Chattanooga, TN, Ronald D. Wells, Jonathan R. Perry, Robinson, Smith & Wells, Chattanooga, TN, for defendant.

### MEMORANDUM

COLLIER, District Judge.

Before the Court is Plaintiff Olive D. Griggs' ("Griggs") Response to specific questions posed by the Court in its Memorandum accompanying the Order granting the summary judgment motion of Defendant Coca–Cola Employees' Credit Union (the "Credit Union") (*See* Court File No. 17, p. 13). The Credit Union filed a Reply Brief (Court File No. 20). While granting summary judgment on the statutory issue, the Court reserved ruling on whether a concurrent common law cause of action existed in this case for the retaliatory discharge of an employee for refusing to participate in, or for refusing to remain silent about, illegal activities. The Court invited Griggs to brief the following issues:

(1) whether her original complaint pleaded a common law cause of action for retaliatory discharge;

(2) whether *Tenn.Code Ann.* § 50–1–304 is meant to supersede a preexisting common law cause of action;

(3) whether and to what extent the Credit Union would be prejudiced by an amendment to the original complaint to include a common law cause of action

(4) whether and to what extent the statutory and the common law causes of action are different and distinct.

After reviewing the briefs of both parties, the Court finds a concurrent common law cause of action does not exist in this case for the retaliatory discharge of an employee for refusing to participate in, or for refusing to remain silent about, illegal activities. Accordingly, the Court will **GRANT** the motion for summary judgment (Court File No. 9) as to this issue. There being no remaining issues before the Court, the case will be **DISMISSED.**

### ANALYSIS

Griggs' Complaint specifically brought this action under and cited as the basis for her cause of action *Tenn.Code Ann.* § 50–1–304 (1990), commonly known as the Tennessee Public Protection Act (the "Act") (*See* Court File No. 1, pp. 1 and 7). *Tenn.Code Ann.* § 50–1–304 reads as follows:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

This statutory cause of action, enacted in 1990, embodies a common law cause of action previously specifically reviewed by the Tennessee Supreme Court in *Chism v. Mid–South Milling Co., Inc.*, 762 S.W.2d 552, 555–57 (Tenn.1988) (considering the cause of action, though not finding one on the facts of the case) and in *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 544 (Tenn.1989) (considering "a cause of action for retaliatory dis-

charge ... when an at-will employee is terminated solely for refusing to participate, or remain silent about illegal activities").

However, both cases hesitated to fully validate the cause of action. The *Chism* court emphasized resting the cause of action upon public policy clearly "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Chism*, 762 S.W.2d at 556. Public policy guidance is necessary, the court reasoned, because at the heart of the law of retaliatory discharge is the balance between the employer's undeniable right to terminate an at-will employee over management and policy decisions and the employee's right to protection from unlawful discharge. *See id.* at 555; *Watson*, 789 S.W.2d at 540 (discussing the authority of courts to determine public policy); *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 444–45 (Tenn.1984) (discussing the role of the legislature in balancing employer and employee interests under the Tennessee Workers' Compensation Law).

The *Watson* court went further. It emphasized "that only in the most extraordinary circumstances should the courts of [Tennessee] impose their judgment in an area which, in the first instance, is clearly a legislative function." *Watson*, 789 S.W.2d at 540. The *Watson* court expressly "[did] not agree that it is appropriate for the courts of [Tennessee] to establish public policy or adopt an exception to the common-law by placing [their] imprimatur thereon in the absence of some constitutional or legislative precedent." *Id.* at 544 (considering the cause of action).

Significantly, the *Chism* court distinguished between public policy announced in statute and that found in case law. *See Chism*, 762 S.W.2d at 555–56 (focusing on the existence of "well-defined public policy"). The court first listed Tennessee statutes prohibiting the discharge of an employee because of jury service, because of creed, color, sex, age, religion, or national origin, and because of a handicap. *Id.* at 555 (statutory citations omitted). The court then analyzed case law prohibiting discharge of an employee for exercising worker's compensation rights, for refusing to commit perjury, for obeying a lawful subpoena, for performing jury duty, and for refusing to falsify records.

*Id.* at 555–56 (citations omitted). The *Chism* court concluded: "In order to state a claim for relief for this very exceptional tort action, the pleader must show clear violation of some well-defined and established public policy." *Id.* at 556.

The Tennessee General Assembly enacted the Act after these cases, thereby satisfying the Tennessee Supreme Court's concern for clear public policy guidance. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992) supports this view. The *Hodges* court faced the narrow issue whether a statutory remedy was the sole and exclusive relief available, to the exclusion of pre-existing common law remedies. *See Hodges*, 833 S.W.2d at 898–99 (noting where a statute creates a new right, the prescribed remedy is exclusive, but finding the statutory remedies were not exclusive because the common law right existed prior to the creation of the statutory remedy). The court *did not* attempt to pinpoint the legal origins of the cause of action before it. Nonetheless, the *Hodges* court stated, in explaining the development of the law of retaliatory discharge,

[i]n *Clanton*, we found an action for retaliatory discharge necessary in order to prevent employers from circumventing *their statutory obligations....* Importantly, *Clanton* is not limited to retaliatory discharge actions arising from an employee's exercise of workers's compensation rights, but *rather makes the tort action of retaliatory discharge available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy.*

*Id.* at 899 (internal citation omitted) (emphasis added). Indicating it had "no intention of creating unwarranted judicial exceptions to the general rule of employment at will," the court again emphasized anchoring the "right to recovery for retaliatory discharge in cases *where an employer violates a clear public policy evidenced by an unambiguous statutory provision.*" *Id.* (emphasis added), *citing Chism*, 762 S.W.2d at 556.

The Tennessee Supreme Court next visited the law of retaliatory discharge in *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn.1993). *Anderson* specifically estab-

lished the elements for a cause of action for discharge in retaliation for asserting a worker's compensation claim. *See id.* at 558. The *Anderson* court continued the distinction begun in *Chism* between well-defined public policy as found in statute and as found in case law. *See id.* at 556. The court clearly listed *Tenn.Code Ann.* § 50–1–304 as a *statutory* basis for well-defined public policy ("By statute, an employee cannot discharge employees because . . . ."), then juxtaposed the *Chism* court's review of case law ("In addition to the protection afforded by statutes, . . . ."). *Anderson,* 857 S.W.2d at 556. Moreover, the court reviewed *Clanton* and clearly noted the statutory origins of the cause of action for retaliatory discharge established by that case. *See id.* at 556–57 ("T.C.A. § 50–6–114 evidences a clear public policy . . . .").

Lastly, in *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822 (Tenn.1994), the court again stressed the need to first have a statutory basis for the cause of action. The *Reynolds* court cited *Hodges,* 833 S.W.2d at 899 (noting availability of cause of action for "employer's violation of a clearly expressed statutory policy"). *Reynolds,* 887 S.W.2d at 823. The *Reynolds* court cited *Hodges* and *Anderson* and their reaffirmation of *Chism*'s statement that "the action will lie where the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision." *Id.* While the *Reynolds* court did indicate that a common law cause of action for retaliatory discharge *does independently exist,* the court did not clearly diverge from its earlier decisions, which firmly anchored the specific cause of action upon a legislative pronounce-

ment of public policy in statute. *See id.* at 824.[1]

When determining how to apply *Tenn. Code Ann.* § 50–1–304, the Tennessee Court of Appeals in *Merryman v. Central Parking System, Inc.,* No. 01A01–9203–CH–00076, 1992 WL 330404 (Tenn.Ct.App. Nov. 13, 1992) followed the "framework of analysis of a common law wrongful or retaliatory discharge action." 1992 WL 330404, at p. *6. The appellate court relied on a similar analysis of a retaliatory discharge action based upon an employee's assertion of a workers' compensation claim. *See Johnson v. Saint Francis Hosp., Inc.,* 759 S.W.2d 925, 928–29 (Tenn.Ct.App.1988) (discussing the elements necessary to establish a *prima facie* case of retaliatory discharge). The Tennessee Supreme Court later essentially adopted the *Johnson* framework in *Anderson,* 857 S.W.2d at 558. In light of this analysis, the *Merryman* court found four elements necessary for the existence of a cause of action under the Act:

(1) the plaintiff's status as an employee of the defendant;

(2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3) the employer's discharge of the employee; and

(4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Merryman,* 1992 WL 330404, at p. *6; *see also Leeman v. Edwards,* No. 01A01–9401–CV–00050, 1994 WL 560889, at p. *2 (Tenn. Ct.App. Oct. 14, 1994).

---

1. The Court understands the cause of action for retaliatory discharge to be based upon well-defined public policy, more often than not expressed by the legislature in statute. This does not mean the common law cause of action itself does not exist; indeed, it is the precursor to the statutory cause of action. It suggests the legislature must first peg the undefined, general common law cause of action to a statutory framework, which details a well-defined public policy. That statutory framework then becomes the mechanism for bringing the cause of action. The statutory framework may, though, include cumulative common law remedies. *See Hodges,* 833 S.W.2d at 899; *Reynolds,* 887 S.W.2d at 824.

However, while the Court is comfortable with this interpretation of Tennessee law, the Court is reluctant to definitively conclude Tennessee state courts would necessarily agree. Tennessee state courts could choose to carve out a common law cause of action not covered by the statute. The Court thus finds it unnecessary and imprudent to shape Tennessee law in the absence of clear Tennessee case precedent. As discussed *infra,* the Court finds Griggs fails to satisfy the elements of a common law cause of action and bases its decision upon that analysis.

The Court previously found Griggs did not satisfy the second and fourth statutory elements (Court File No. 17, pp. 8–13). Essentially, the Court denied Griggs the right to pursue her statutory cause of action *because she could not satisfy the very element upon which the legislature based its reason for codifying the cause of action,* i.e., a plaintiff's refusal to participate in, or to remain silent about, illegal activities as clearly defined by public policy.

Under the common law cause of action, Griggs would have to show:

(1) an employment at-will relationship;

(2) a clear declaration of public policy which imposes duties upon the employee or employer; and

(3) discharge of the employee for refusing to violate those duties.

*Reynolds,* 887 S.W.2d at 824. Even assuming *arguendo,* first, a separate common law cause of action exists in this case and, second, Griggs properly pleaded such a cause of action in her Complaint, Griggs cannot meet the essential elements of the common law cause of action. The facts of this case do not support a finding of *a clear declaration of public policy.* Certainly during the presentation of the common law cause of action Griggs would have to indicate her alleged basis for termination. Presumably, Griggs would argue the Credit Union terminated her for refusing to participate in, or to remain silent about, illegal activities as defined by public policy.

*Merryman* is again instructive. In *Merryman,* the plaintiff brought a common law cause of action *and* a statutory cause of action for retaliatory discharge. *See Merryman,* 1992 WL 330404, at p. *2. The *Merryman* court reviewed Tennessee Supreme Court precedent and concluded, first, nothing in the statutes and regulations upon which Merryman based his allegations supported an implicit common law cause of action as was the situation in *Clanton* and, second, developing public policy exceptions to the employee-at-will doctrine was a legislative function as recognized by *Watson. Id.,* 1992 WL 330404, at p. *5.

Such is the case here. Griggs failed to clearly establish the existence of a clear declaration of public policy as articulated in the statutes upon which she relies for her allegations. Moreover, the Court cannot see the risk of clear, immediate harm to the public by the types of violations of credit union laws and regulations alleged by Griggs, which would mandate additional protection beyond that already provided by the existing regulatory apparatus. Even assuming *arguendo* the existence of such a clear declaration of public policy, the Court finds, as it did in its earlier Memorandum, Griggs failed to demonstrate sufficient proof that the Credit Union discharged her for violating these duties (*See* Court File No. 17, pp. 8–13).

Accordingly, the Court will **GRANT** the motion for summary judgment as to the existence of a separate cause of action in this case based upon the common law (Court File No. 9). There being no remaining issues before the Court, the case is **DISMISSED.**

An order will enter.