IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2000 Session

## RONALD M. GUY v. MUTUAL OF OMAHA INSURANCE COMPANY

An Interlocutory Appeal from the Circuit Court for Shelby County
No. 69975-3 T.D.     Karen R. Williams, Judge

No. W1999-00942--COA-R9-CV - Filed March 1, 2001

This is a retaliatory discharge case.  The plaintiff employee reported to government authorities the illegal activities of a third party, which resulted in adverse consequences to the employer.  The plaintiff alleged that he was discharged in retaliation for reporting the illegal activities.  The employer's motion for summary judgment was denied, and the employer then filed this interlocutory appeal.  We hold, *inter alia*, that the Tennessee whistleblower statute is not limited to reports of illegal activities of the employer, and that any claims to which the whistleblower statute is applicable must meet the requirements of the statute.  The whistleblower statute is not applicable to the plaintiff's claims in this case, because the plaintiff was not aware at the time of the report that it could result in adverse consequences to the employer, and the plaintiff did not face the choice between reporting the illegal activities or keeping his job.  The plaintiff states a common law claim for retaliatory discharge in violation of public policy, and proffers sufficient evidence for a trier of fact to find that retaliation was a substantial factor in his discharge.  Therefore, the denial of the employer's motion for summary judgment is affirmed.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Herbert E. Gerson, Thomas J. Walsh, Jr., Timothy S. Bland, Memphis, Tennessee, for the appellant, Mutual of Omaha Insurance Company.

Donald A. Donati, Memphis, Tennessee, for the appellee, Ronald M. Guy.

### OPINION

This is retaliatory discharge case. The trial court denied the employer's motion for summary judgment, and the employer was granted permission to file this interlocutory appeal.  The facts as presented to the trial court are outlined below.

Plaintiff/Appellee Ronald Guy ("Guy") was employed by Defendant/Appellant Mutual of Omaha Insurance Company ("Mutual") from December 1991 until April 1995. Guy was an at-will employee with Mutual, and he served as general manager of its Memphis division office from June 1992 until his termination. As general manager, Guy oversaw Mutual's insurance agents in West Tennessee. Guy's other duties included recruiting and training insurance agents, managing the administrative functions of the Memphis office, and making the Memphis office profitable.

As of early November 1994, Mutual viewed Guy's job performance favorably. In a letter dated November 4, 1994, Dave Rooney ("Rooney"), Area Sales Director for Mutual and Guy's immediate supervisor, commented to Don Lilly, Jr. ("Lilly"), Regional Vice President of Mutual, that Guy had "done a good job in adapting to a new situation in one of the worst offices at the time." For the first time in memory, he stated, "we have a great opportunity to have Memphis enjoy the success it deserves." In light of this performance, Rooney recommended that Mutual "guarantee" a portion of Guy's earnings, stating that "[i]t is now time for me to help Ron get to a six figure income that will be built solidly through Process Management."

However, the chain of events that would eventually lead to Guy's discharge from Mutual had begun sometime in late 1992. At that time, Guy considered hiring Jerry Mac Roberson ("Roberson"), a licensed insurance agent based in Dyer County, Tennessee, to be an agent for Mutual. Guy testified that Roberson passed a background check, but Guy decided not to hire Roberson after conducting his own investigation. Guy testified that he never considered Roberson to be a Mutual employee or agent. Nevertheless, Mutual's home office in Omaha, Nebraska assigned Roberson an "agent production number" after Roberson passed the initial background check.

The parties dispute whether Roberson ever became an agent of Mutual. Guy said that it was his understanding that Roberson was never a contracted agent of Mutual. Guy believed that, in order for Roberson to be a contracted agent, Guy would have to formally execute the contract on behalf of Mutual. However, Guy admits that, during the pre-contract phase, a member of his staff may have forwarded to Mutual's home office some documents concerning Roberson's appointment. Mutual contends that Guy had contracted Roberson as a Mutual agent. Mutual notes documents Guy used in a presentation to senior officers at Mutual's home office, in which Guy listed Roberson as having been contracted as an agent on December 1, 1992. A different page on the same document lists Roberson as an agent "in precontract." Mutual also produced a "Termination of Agency Contract or Agreement" form notice, with Guy's signature, filed with the Tennessee Department of Commerce and Insurance on September 1, 1993. This form notified the agency that Roberson's contract with Mutual had been terminated eight months earlier, on January 1, 1993. Mutual contends that there would have been no reason to notify the agency of Roberson's termination if Roberson never became a contracted agent. Guy asserts that the signature on the form notice is not his signature, and denies filing the termination notice with the agency.

Regardless of whether Roberson was ever a contracted agent for Mutual, it is undisputed that Roberson was given materials during his pre-contract phase that enabled him to represent himself

2

to third parties as a Mutual agent. In December 1992, Roberson made a sales call on Doris Johnson ("Johnson") of Dyersburg, Tennessee. Roberson showed Johnson documents from both Mutual and John Hancock Insurance Company and falsely represented himself as a Mutual agent. Johnson later signed an application for a Mutual annuity. She gave Roberson a stock certificate, as well as checks made payable to Mutual totaling approximately $70,000. Roberson deposited the checks into his personal account. Roberson began sending Johnson monthly checks written on his personal checking account. He represented these to be "annuity checks." Subsequently, one of the checks was returned to Johnson for insufficient funds.

In January or February 1994, Roberson contacted Guy and told him that he had a stock certificate belonging to Johnson which was payable to Mutual. Roberson forwarded the stock certificate to Guy. Guy then gave the stock certificate to one of Mutual's agents, Houston Jones ("Jones"), with instructions to contact Johnson and determine whether she still wanted the stock to be sold and the proceeds invested with Mutual. When Jones visited Johnson in January or February 1994, Johnson showed Jones a John Hancock Insurance Company receipt that Roberson had given to her, reflecting the annuity she had purchased from Roberson. Johnson told Jones that Roberson had sent her an annuity check that had bounced. After the visit with Johnson, Jones told Guy the information that Johnson had given him. Guy immediately contacted a manager at John Hancock with the information concerning Roberson's dealings with Johnson. He also reported the matter to the Tennessee Department of Commerce and Insurance. Guy did not tell his immediate supervisor, Rooney, about the Roberson matter. Guy maintains that when Jones told him the information that he had received from Johnson, he did not feel that Mutual was involved in any fraud against her, or that Mutual was exposed to any liability for Roberson's misconduct. Eventually, about eight months later, on October 13, 1994, Guy reported the matter to the Mutual Law Division.

On November 17, 1994, the Tennessee Department of Commerce and Insurance requested that Mutual reimburse Johnson $67,147.83 as a result of Roberson's conduct. The letter from the Department stated that, because Roberson had been given a Mutual agent production number and other Mutual materials customarily given to new Mutual agents, Mutual had enabled Roberson to represent himself to Johnson as a Mutual agent. Therefore, the Department concluded that Mutual was responsible for Johnson's loss. On December 16, 1994, Michael Kennedy from Mutual's legal office wrote a reply letter to the Tennessee Department of Commerce and Insurance. In Kennedy's letter, Mutual admitted responsibility for Johnson's loss but asserted that the John Hancock Company or Roberson should pay part of the restitution to Johnson. Ultimately, however, Mutual made restitution to Johnson in the form of an annuity worth $63,781.72. Mutual applied a deficit in the same amount to Guy's office, and Guy's monthly bonus pay was reduced by 25% beginning in January 1995 in order to correct the deficit.

Meanwhile, another event relevant to Guy's discharge from Mutual was unfolding. In late 1994, a female agent in the Memphis office told Guy that she had been sexually harassed by a male employee. The male employee was the district sales manager in the Memphis office and, as such, worked under Guy's supervision. Guy took the female agent's statement and reported the allegation to Rooney. In January 1995, Kim Hadley-Bidroski ("Bidroski"), Mutual's Senior Regional Human

Resources Consultant, sent Guy a letter marked "Personal and Confidential" stating that the investigation into the female agent's allegation had been completed and that no action would be taken on the matter. The letter instructed Guy to distribute documents concerning Mutual's sexual harassment policy to employees and agents at the Memphis office. Guy testified that he understood that the letter itself was not to be distributed. Nevertheless, Guy's administrative staff distributed the letter throughout the Memphis office. After the letter had been distributed, the female agent approached Guy and told him that she felt "threatened." Guy responded to the female agent that he "didn't know what she expected." The female agent reported the distribution of the letter and her conversation with Guy to Mutual's home office.

Subsequently, on March 1, 1995, Guy met with Rooney, Bidroski, and Linda Beach ("Beach"), a manager in Mutual's human resources office. Rooney gave Guy a letter voicing Mutual's "serious concern" after a review of Guy's handling of the Roberson matter and the sexual harassment allegation. The letter, which was drafted by Bidroski for Rooney's signature, listed areas of "continuing concern" to Mutual, including Guy's "apparent lack of understanding of the personal and corporate liability involved in communicating with the Tennessee Department of Insurance without notifying Agency Sales management," and the "lack of judgment . . . displayed in [Guy's] communication involving the results of the sexual harassment allegation." Rooney, on a recommendation from Bidroski and Beach, placed Guy on "written notice" as a result of his "unacceptable performance," resulting in a 20% reduction in Guy's monthly bonus income, in addition to the reductions already in place due to the Roberson matter. Rooney stated that "continued unacceptable performance may result in your termination of employment with Mutual. . . ." According to Beach, Guy responded that he would not work for $30,000 per year. Beach testified that she immediately asked Guy if that meant he was resigning, and he responded no.

While still on "written notice," Guy received a telephone call from Greg Paylor ("Greg"). Greg Paylor had previously worked under Guy's supervision as a manager in Mutual's Memphis office, and was the son of an acquaintance of Guy's, Larry Paylor ("Larry"). Greg had been working in Mutual's home office. During the conversation, Greg told Guy that he planned to take a position in Mutual's Tupelo, Mississippi office. On April 5, 1995, Guy telephoned Larry. At the time of the telephone call, Larry was an employee of Metropolitan Life Insurance Company in Memphis, a competitor of Mutual. Larry said later that during the telephone conversation with Guy, Guy made several disparaging remarks about Mutual's decision to transfer Greg to Tupelo and about Mutual's general business operations and methods. Larry reported that Guy said that Tupelo is the "kiss of death" for Mutual managers, that he felt that Mutual was out to "f*** over" Greg, and that Greg should be prepared to "look over his shoulder" all the time. Guy advised Larry that Greg should either force Mutual to transfer him back to Memphis or leave Mutual and take a job with Metropolitan Life. Larry Paylor reported the telephone conversation with Guy to Bidroski at Mutual's human resources office.

On April 19, 1995, Mutual terminated Guy's employment. Bidroski and Rooney told Guy that he had been fired for his unacceptable performance as demonstrated by his failure to use judgment commensurate with the position of General Manager. Neither Bidroski nor Rooney told Guy that his

4

telephone conversation with Larry Paylor was a factor in his termination. It is undisputed that no Mutual official told Guy that his discharge was related to his reporting of Roberson to the Department of Commerce and Insurance over a year earlier.

On May 19, 1995, Guy filed a lawsuit against Mutual asserting a common law cause of action for wrongful discharge in violation of public policy. In the complaint, Guy alleged that he became aware of events during his employment with Mutual indicating that Roberson had engaged in illegal activity. At the time of the events, Guy thought that Roberson was an employee or agent of the John Hancock Insurance Company. Guy alleged that he reported Roberson's conduct to the Tennessee Department of Commerce and Insurance, based on his belief that he had a legal obligation to report any unethical or unlawful activity of another licensed agent. Guy stated that Roberson was indicted for fraud and the Department of Commerce and Insurance determined that Mutual should be held liable for the monetary loss of Roberson's victim. Guy alleged that Mutual later began "a campaign of retaliation" against him because of his disclosure of Roberson's fraud to the Department of Commerce and Insurance. He asserted that his eventual discharge was in retaliation for his reporting Roberson's illegal activity and for his failure to remain silent about that activity.

On July 22, 1997, Mutual filed a motion for summary judgment, asserting that Guy could not prove that his discharge was caused solely by his alleged refusal to remain silent about illegal activities. In the motion, Mutual noted that Guy admitted that an employee's judgment, or lack thereof, can legitimately play a role in an employer's decision to hire and fire the employee. Mutual argued that Guy displayed a critical lack of judgment in his handling of the sexual harassment investigation and in his conversation with Larry Paylor, and that this lack of judgment played a substantial role in his termination.

In response to Mutual's motion for summary judgment, Guy submitted the affidavit of Douglas Sizemore ("Sizemore"), Commissioner of the Tennessee Department of Commerce and Insurance. In his affidavit, Sizemore noted that the Department is responsible for licensing insurance agents in Tennessee and for ensuring compliance by all insurance agents and their appointing insurers with the statutory requirements set forth in Tennessee Code Annotated §§ 56-6-153 and 56-6-155. Sizemore asserted that "it is the Department's position that any licensed insurance agent in the state of Tennessee has a duty and responsibility to report activity or conduct by another agent that is in violation of any of the insurance statutes." He stated that this duty is imposed in order to effectuate the purpose and intent of the insurance statutes and to protect the citizens of Tennessee from unscrupulous agents and insurers. Sizemore stated that if any agent or insurer knowingly failed to report a violation of Tennessee Code Annotated 56-6-155(a), or of any other statute, the Department would be compelled to take action against that agent or insurer, including possible license revocation or suspension, and possible civil penalties. Sizemore did not state the statutory or regulatory basis for such actions against an insurance agent who failed to report another agent's illegal activity.

On October 2, 1998, the trial court entered an order denying Mutual's motion for summary judgment, without elaborating on the reasoning for its decision. Mutual filed a motion in the trial court for permission for interlocutory review of the trial court's denial of its summary judgment

motion, which was granted by the trial court.  Permission for interlocutory appeal of the trial court's denial of Mutual's  motion for summary judgment was later granted by this Court.

On appeal, Mutual argues that the trial court erred in not granting Mutual's motion for summary judgment.  It contends that Guy's suit for retaliatory discharge is a "whistleblower" claim, governed by Tennessee Code Annotated 50-1-304, Tennessee's "whistleblower statute."  Mutual maintains that common law whistleblower claims in Tennessee have been supplanted by the whistleblower statute, so that Guy must prove the elements of the claim set forth in the statute, including the fact that Guy's refusal to remain silent about illegal activities was the "sole" reason for his discharge.  In the alternative, Mutual contends that, under the common law, Guy is required to show that his refusal to remain silent about illegal activities was the sole reason for his discharge.  Mutual asserts that Guy cannot show that his failure to remain silent about illegal activities was the sole cause or even a substantial factor in his discharge, and contends that Guy was not asked to participate in illegal activity or asked to remain silent about illegal activity .  If Guy's claim is not governed by Tennessee's whistleblower statute, Mutual argues that the facts do not give rise to a common law claim for retaliatory discharge.

Guy argues on appeal that his claim is not a whistleblower claim and therefore is not governed by the requirements of Tennessee Code Annotated § 50-1-304.  He contends that Tennessee Code Annotated § 50-1-304 governs claims which assert that the plaintiff suffered retaliation for refusing to participate in, or remain silent about, illegal activities of the employer, not the illegal activities of a third party such as Roberson.  Guy also argues that the common law tort of retaliatory discharge survived enactment of the whistleblower statute, and is concurrent with the whistleblower statute, and that for the concurrent common law tort of retaliatory discharge, a plaintiff need only show that retaliation was a substantial factor in the discharge, not the sole reason.  Guy asserts that his allegations, if taken as true, support a common law claim for retaliatory discharge in violation of public policy.  He maintains that the evidence is sufficient to show a genuine dispute as to whether retaliation was a substantial factor in Guy's discharge.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  Tenn. R. Civ. P. 56.04.  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).  On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.  *See id.*  In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial.  In this regard, Rule 56.05 [now 56.06] provides that the nonmoving party cannot simply rely upon his pleadings

6

but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is appropriate only when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See id.* Therefore, our review of the trial court's denial of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

We examine first Appellant Mutual's argument that Tennessee common law regarding whistleblower claims has been supplanted by the whistleblower statute, and that therefore Guy must show, *inter alia*, that his refusal to remain silent about illegal activities was the sole reason for his discharge. We will then discuss Guy's assertion that his claim is not a whistleblower claim, and therefore could not be governed by the whistleblower statute.

The doctrine of employment at-will is a long-standing rule in Tennessee which recognizes the right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. *See Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *see also Darnall v. A+ Homecare, Inc.*, No. 01-A-01-9807-CV-0034, 1999 WL 346225, at *2 (Tenn. Ct. App. June 2, 1999). By statute and case law, however, some restrictions have been imposed upon the right of an employer to terminate an at-will employee. *See Stein*, 945 S.W.2d at 716. In Tennessee, an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right or for another reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory or regulatory provision. *See id.* at 717.

In *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552 (Tenn. 1988), the Tennessee Supreme Court recognized that a common law claim for retaliatory discharge may arise in cases in which the employer violates a clear public policy and the violation is a "substantial factor" in the termination of the at-will employee. *Id.* at 556. The Court emphasized that the public policy forming the basis for the claim must be clearly "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Id.* One year later, in *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538 (Tenn. 1989), the Tennessee Supreme Court recognized that "a cause of action for retaliatory discharge arises when an at-will employee is terminated solely for refusing to participate, continue to participate, or remain silent about illegal activities." *Id.* at 544. The *Watson* Court asserted that it would be inappropriate for the Court "to establish public policy or adopt an exception to the common-law by placing [its] imprimatur thereon in the absence of some constitutional or legislative precedent." *Id.* It cautioned that "only in the most extraordinary circumstances should the courts of this State impose their judgment in an area which, in the first instance, is clearly a legislative function." *Id.* at 540.

In 1990, the State legislature enacted Tennessee Code Annotated § 50-1-304 (Supp. 2000) as part of the Public Protection Act of 1990, Chapter 771, Public Acts of 1990. The statute, commonly referred to as the "whistleblower statute," is a narrowly crafted exception to the common law employee-at-will rule. *See Darnall* at *2. The statute provides, in pertinent part:

> (a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
>
> * * *
>
> (c) As used in this section, "illegal activities" means activities which are in violation of the criminal code or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.
>
> (d)(1) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

*See* Tenn. Code Ann. § 50-1-304. The question arises, then, whether a common law cause of action remains for retaliatory discharge in a whistleblower case, after enactment of the whistleblower statute.

This issue has been discussed in previous cases, but has not been decided by a Tennessee appellate court. In *Reynolds v. Ozark Motor Lines*, 887 S.W.2d 822 (Tenn. 1994), the plaintiff truck drivers alleged that they were discharged for refusing to commence a trip in a truck they had not driven before, without having adequate time to inspect the truck. *Id.* at 823. By statute and regulation, the plaintiff drivers were required to perform such an inspection. *Id.* at 824-25. The *Reynolds* Court found that a common law action for retaliatory discharge pre-dated enactment of the whistleblower statute. *Id.* at 825. It found that the elements necessary for a retaliatory discharge claim were present: "an employment at-will relationship; a clear declaration of public policy which imposes duties upon the employee or employer; and discharge of the employee for refusing to violate those duties." *Id.*

In *Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059 (E.D. Tenn. 1995), the federal court examined Tennessee law on retaliatory discharge. The plaintiff Griggs alleged that she was discharged by the defendant credit union because she "repeatedly brought to light" practices by the credit union which were illegal or contrary to regulations governing credit unions. *Id.* at 1061-62. At Griggs' request, the Tennessee Department of Financial Institutions conducted an audit which resulted in criticism of some of the credit union's practices. *Id.* at 1061. About six weeks later, Griggs was discharged, purportedly based on her failure to perform certain job duties and her refusal to cooperate concerning a new computer system. *Id.* Griggs filed suit against the credit union under Tennessee Code Annotated § 50-1-304. *Id.* at 1062.

8

Citing ***Merryman v. Central Parking System, Inc.***, No. 01A01-9203-CH-00076, 1992 WL 330404 (Tenn. Ct. App. Nov. 13, 1992), the ***Griggs*** court found four elements necessary under the whistleblower statute:

> (1) the plaintiff's status as an employee of the defendant;

> (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;

> (3) the employer's discharge of the [plaintiff] employee; and

> (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

***Griggs***, 909 F. Supp. at 1063, quoting ***Merryman***, 1992 WL 330404, at *6. The ***Griggs*** court found that Griggs did not establish the second element. It noted that it was undisputed that Griggs was not explicitly directed to remain silent about illegal activities. Observing that Griggs was discharged after reporting alleged illegalities, the court found that "Griggs did not face the choice between reporting illegalities and keeping her job," stating that "there must be a fear of dismissal contemporaneous with the plaintiff's decision whether to report the illegal activities." ***Griggs***, 909 F. Supp. at 1064. The court remarked that "a more precipitous termination within a few days or a couple of weeks would better support a charge of retaliatory discharge than the five to six weeks lapse of time in this case." ***Id.*** at 1064. Consequently, the ***Griggs*** court concluded that the discharge was "not enough to establish an implied intention for the Plaintiff to remain silent. . . ." ***Id.***

In addition, the ***Griggs*** court observed that the fourth element required the plaintiff to show that her refusal to remain silent was the "sole" reason for the discharge. ***Id.*** at 1065. The Court found that there was undisputed evidence supporting the credit union's asserted reasons for the discharge, and therefore Griggs could not establish that her refusal to remain silent was the sole reason. ***Id.*** at 1065-66. Accordingly, the court concluded that Griggs' claim under the whistleblower statute should be dismissed. ***Id.*** at 1066. It expressly reserved the issue of "whether a concurrent common law cause of action exists in this action." ***Id.***

Subsequently, after having the parties brief the issue of whether a concurrent common law cause of action remained, the ***Griggs*** court addressed the issue. ***Griggs v. Coca-Cola Employees' Credit Union,*** 909 F. Supp. 1066 (E.D. Tenn. 1995). The ***Griggs*** court concluded that "a concurrent common law cause of action does not exist in this case for the retaliatory discharge of an employee for refusing to participate in, or for refusing to remain silent about, illegal activities." ***Id.*** at 1067. However, in the alternative, the ***Griggs*** court concluded that, even if a concurrent common law cause of action existed, Griggs could not establish two essential elements: a clear declaration of public policy, and that the plaintiff was discharged for the reason alleged. ***Id.*** at 1070.

The existence of a concurrent common law claim is referenced, but not decided, in ***Darnall v. A+ Homecare, Inc.***, No. 01A01-9807-CV-0034 1999 WL 346225 (Tenn. Ct. App. June 2, 1999).

9

The majority opinion in **Darnall** states at the outset that the complaint asserted retaliatory discharge "based solely upon Tennessee Code Annotated Section 50-1-304." **Id.** at *1. After reviewing the common law of retaliatory discharge, the **Darnall** court addressed the elements necessary to establish a claim under the whistleblower statute, noting that it required "an exclusive causal relationship" between the discharge and the employee's refusal to participate in, or remain silent about, illegal activities. **Id.** at *5.[1]

Thus, the issue presented is one of first impression for a Tennessee appellate court, namely, whether a concurrent common law claim remains for retaliatory discharge of an employee for refusing to participate in or remain silent about illegal activities, after enactment of Tennessee's whistleblower statute, Tennessee Code Annotated § 50-1-304. We must conclude that any claim to which the whistleblower statute is applicable must meet the requirements of the statute. In particular, the plaintiff must show that he was discharged solely for refusing to participate in, or remain silent about, illegal activities. It does not make sense to have a concurrent common law whistleblower claim for which the plaintiff need only show that the refusal to participate in or remain silent about illegal activities was a "substantial factor" in the discharge. Therefore, in this case, if Tennessee's whistleblower statute is applicable to Guy's claim, he must show that his refusal to remain silent about illegal activities was the sole reason for his discharge.[2]

Consequently, we must determine whether Tennessee's whistleblower statute is applicable to Guy's claim against Mutual. Mutual contends that this is a classic whistleblower claim, governed by the whistleblower statute. Guy argues that the whistleblower statute is applicable only to claims that involve alleged illegal activities of the employer, and is not applicable to Guy's claim that he was discharged for reporting the illegal activities of a third party, namely, Roberson.

Tennessee's whistleblower statute states in part:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

* * *

(c) As used in this section, "illegal activities" means activities which are in violation

---

[1]The concurrence by Judge Koch stressed adherence to the statutory language that refusal to participate in or remain silent about illegal activities must be the "sole" reason for the discharge. **Id.** at *9. The concurrence did not address a concurrent common law whistleblower claim.

[2]Under **Hodges v. S. C. Toof & Co.**, 833 S.W.2d 896 (Tenn. 1992), where a common law tort action pre-dates the statutory claim and the statutory remedies are not explicitly exclusive, the statutory remedies are considered cumulative. **Id.** at 899. We need not reach that issue in this case.

of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

Tenn.Code Ann. § 50-1-304. The statute does not state that the "illegal activities" must be those of the employer. Indeed, the statutory definition of "illegal activities" is quite broad, including any violation of the state or federal civil or criminal code, as well as violations of regulations pertaining to public health, safety or welfare. Tenn. Code Ann. § 50-1-304(c). Under these circumstances, we cannot construe the statute narrowly, limiting it to claims of alleged illegal activities of the employer.

Thus construed broadly, is the whistleblower statute applicable to Guy's claim? In this case, the "illegal activities" reported were those of Roberson, in defrauding Johnson. Mutual, while not a participant in the fraud, was found responsible by the Tennessee Department of Commerce and Insurance for giving Roberson the means to accomplish his fraud by enabling him to represent himself to Johnson as a Mutual agent. Thus, while there is no evidence that Mutual violated any civil or criminal code or regulations pertaining to public health, safety or welfare, Mutual clearly suffered adverse consequences from the reporting of Roberson's illegal activities, since it was required to reimburse Johnson.

Guy asserts that, at the time he reported the possible fraud to the State, he believed only that John Hancock Insurance was at risk because Roberson was a contracted agent for John Hancock. Guy maintains that, at the time his report was made, he did not know that Mutual could be potentially held responsible for the fraud perpetrated against Johnson.

Mutual contends that Guy's assertion "defies logic," pointing to the termination notice filed with the State, allegedly bearing Guy's signature, stating that Roberson's agency contract with Mutual had been terminated. However, Guy disputes that the signature on the notice is his. Mutual also questions Guy's assertion in view of the fact that Guy knew that Johnson's stock certificate was payable to Mutual, and that Guy sent a Mutual agent to visit Johnson. While these facts bear on Guy's credibility, for purposes of a summary judgment motion, the non-movant's version of the facts must be accepted as true. *See Bain*, 936 S.W.2d at 622. The Court is "to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Thus, under Guy's version of the facts, at the time he made the report to the Tennessee Department of Commerce and Insurance, he did not know that Mutual could be deemed at fault for enabling Roberson to defraud Johnson.

The whistleblower statute "requires a situation in which an employee must either remain silent about an illegal activity or face the possibility that he may be discharged." *Merryman*, 1992 WL 330404, at *7. Other cases have held that "there must be a fear of dismissal contemporaneous with the plaintiff's decision whether to report the illegal activities." *Henderson v. Corrections Corp. of America*, 918 F. Supp. 204, 210 (E.D. Tenn. 1996). Accepting Guy's version of the facts as true, at the time Guy made the report to the Tennessee Department of Commerce and Insurance, he did not know that his report could have adverse consequences for Mutual. Guy "did not face the choice between reporting illegalities and keeping his job." *Id.*, citing *Merryman*, 1992 WL 330404, at *7,

11

and *Leeman v. Edwards*, No. 01A01-9401-CV-00050, 1994 WL 560889, at \*5 (Tenn. Ct. App. Oct. 14, 1994). Rather, long after Guy reported Roberson's fraud, it turned out that Mutual had some culpability and, according to Guy, Mutual began a campaign to discharge Guy for reporting Roberson's fraud and bringing adverse consequences to Mutual. Under these circumstances, we must find that Tennessee's whistleblower statute, Tennessee Code Annotated § 50-1-304, is inapplicable to Guy's claim.[3]

Guy's claim, if cognizable, must be a common law claim of retaliatory discharge in violation of "a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. . . ." *Mason v. Seaton*, 942 S.W.2d 470, 475 (Tenn. 1997), quoting *Reynolds*, 887 S.W.2d at 823. Such a discharge is actionable if "the employer's violation was a substantial factor in the employee's discharge." *Mason*, 942 S.W.2d at 475. Normally, in order to recognize an employee's claim as actionable, "very specific statutory violations [must be] charged, and usually the employee's personal exposure to civil or criminal sanctions [is] emphasized." *Chism*, 762 S.W.2d at 556. Tennessee courts have noted that, "[i]n order to state a claim for relief for this very exceptional tort action, the pleader must show clear violation of some well-defined and established public policy." *Id.*

In this case, it is undisputed that Roberson's actions were illegal. Guy notes that, under Tennessee Code Annotated § 56-6-155(a), Tennessee's Commissioner of Commerce and Insurance may suspend the license of an agent for actions such as Roberson's and may also impose civil penalties. Tenn. Code Ann. § 56-6-155(a) and (b).

The issue becomes, then, whether Guy had a duty to report Roberson's actions, and whether Guy had "personal exposure to civil or criminal sanctions . . ." if he failed to do so. *Chism*, 762 S.W.2d at 556. Tennessee Code Annotated § 56-6-155 contains no express provision requiring that conduct such as Roberson's be reported. Any statutory duty to report is derived from Tennessee Code Annotated § 56-6-153, which provides:

> (a) Any <u>insurance company</u> which enters into or terminates an agency contract or agreement with a licensed insurance agent or limited insurance representative shall, within thirty (30) days, notify the commissioner on the prescribed form.
>
> * * *
>
> (c)(1) If the termination of any agency contract or agreement with an insurance agent

---

[3]Given the procedural posture of this case, we do not grant Mutual's motion for summary judgment as to any whistleblower claim because the plaintiff asserts only a common law claim in his complaint. The whistleblower statute is asserted as a defense by Mutual; Mutual contends that the plaintiff's only alleged claim is under the whistleblower statute, and that Guy cannot prove the required elements under the whistleblower statute.

12

or limited insurance representative is for any of the causes listed in § 56-6-155, the <u>insurance company</u> shall:

(A) Notify the commissioner on the prescribed form. . . .

\* \* \*

(d) Any <u>insurance company</u> violating the provisions of this section may be subject to a civil penalty of up to five hundred dollars ($500) for each violation, in addition to such other penalties as may be provided by this code.

Tenn. Code Ann. § 56-6-153 (emphasis added). Therefore, under this statute, Mutual, but not necessarily Guy,[4] would be required to report the termination of Roberson's agency contract for fraud as mandated in Section 56-6-155. The penalty under this statute for failing to do so would be a $500 fine levied against Mutual, not Guy.

Moreover, under Guy's version of the facts, he was not aware at the time of his report that Roberson was ever considered an agent of Mutual; consequently, at the time Guy reported Roberson's conduct, he would not have been notifying the Department of "the termination of any agency contract or agreement with an insurance agent . . . for any of the causes listed in § 56-6-155 . . . ." Tenn. Code Ann. § 56-6-153(c)(1)(A). Indeed, although the record contains a termination notice apparently sent by Guy in order to notify the Department of Roberson's termination, Guy disputes that the signature on the notice is his. Therefore, Guy's reporting of Roberson's conduct to the Department was not pursuant to any obligation of Mutual or Guy under Section 56-6-153.

Commissioner Sizemore stated in his affidavit that "if any agent or insurer knowingly and willfully fails to report violations of Tennessee Code Annotated § 56-6-155(a), or any other statute, this Department would be compelled to take action against that agent or insurer. . . ." Neither Commissioner Sizemore nor Guy cite any statutory or regulatory basis for this assertion. While the "administrative construction of statutes by officers charged with the duty of their enforcement . . . is entitled to great consideration by the courts . . . ," Sizemore's affidavit does not indicate that this assertion stems from the construction of a statute. *State ex rel Chapdelaine v. Torrence*, 532 S.W.2d 542, 547 (Tenn. 1975). Even if it did, the Court would not be bound by it. *Id.* Thus, the underpinnings for Guy's duty to report Roberson's misconduct fall short of the standard discussed in *Chism*, which stated that in a claim of retaliatory discharge in violation of public policy, the employee "usually" faces "personal exposure to civil or criminal sanctions," and "very specific statutory violations" are charged. This distinguishes Guy's claim from *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822 (Tenn. 1994), in which the plaintiff truck drivers were allegedly discharged for failing to make certain trips which their employer instructed them to make without giving them adequate time to perform safety inspections of their trucks as required by law. In *Reynolds*, the truck drivers faced specific statutory criminal penalties for failing to conduct such inspections. Under the circumstances, the Tennessee Supreme Court held that the truck drivers had

---

[4]Guy asserts that, as the general manger of Mutual's Memphis office, any obligation of Mutual to report Roberson's transgressions would fall to him.

13

a common law claim for retaliatory discharge for the employer's violation of a well-defined public policy. *See Reynolds*, 887 S.W.2d at 824-25.

Nevertheless, Tennessee Code Annotated § 56-6-155 is clearly a public welfare statute that is intended to protect consumers from unscrupulous acts by insurance agents. Guy's actions in reporting Roberson to state authorities furthered the purposes of § 56-6-155 and prevented Roberson from continuing his fraudulent conduct. In *Mason v. Seaton*, 942 S.W.2d 470, 475 (Tenn. 1997), in discussing the purpose of the whistleblower statute, the Tennessee Supreme Court stated that "[t]he enactment [of the whistleblower statute] is a statutory recognition that the protection of employees who report violations of laws, regulations, and rules is a part of Tennessee public policy."

Under these circumstances, this case presents a close question as to whether a common law claim for retaliatory discharge in violation of public policy should be recognized. As noted above, the Tennessee Supreme Court has cautioned that, in the absence of legislative enactment, such a claim should be recognized "only in the most extraordinary circumstances. . . ." *Watson*, 789 S.W.2d at 540. Despite the assertion in Commissioner Sizemore's affidavit, Guy points to no statute or regulation requiring Guy to report Roberson's conduct, or showing that Guy had "personal exposure to civil or criminal sanctions" for failing to do so. *Chism*, 762 S.W.2d at 556. Nevertheless, Roberson's conduct violated Tennessee Code Annotated § 56-6-155, a statute clearly enacted to protect the public from insurance fraud. If such misconduct were not reported by those with knowledge, enforcement of Section 56-6-155 would be difficult, and the public welfare would suffer. The Tennessee Supreme Court has stated that "the protection of employees who report violations of laws, regulations, and rules is a part of Tennessee public policy." *Mason*, 942 S.W.2d at 475. Under these circumstances, we must conclude that Guy states a common law claim for retaliatory discharge in violation of Tennessee public policy.

Next, we must consider whether Guy has proffered sufficient evidence to create a genuine issue of fact as to whether his report of Roberson's conduct was a "substantial factor" in his termination. In this case, it is undisputed that Mutual had other reasons for the termination of Guy's employment. Guy does not dispute the fact that, at the time he reported Roberson's misconduct to state authorities, he did not inform Mutual of his action. Guy does not dispute that the confidential letter from Bidroski on the sexual harassment claim was distributed by an employee under his supervision to employees throughout the Memphis office. Guy does not dispute the call to Larry Paylor or the gist of his conversation with Larry Paylor.

In addition, we must examine the timeline of events between Mutual's learning of Guy's communication to the Department of Commerce and Insurance and Guy's discharge. While Guy reported Roberson to the Tennessee Department of Insurance in January or February 1994, he did not report the Roberson matter to Mutual's Law Division until October 1994. On November 4, Rooney wrote a letter to Lilly praising Guy's job performance, in which Rooney recommended that Guy receive an increase in his "guaranteed" salary. The record does not indicate whether Rooney knew of the Roberson incident at the time he wrote this letter. On November 17, 1994, the Tennessee Department of Commerce and Insurance notified Mutual that it was liable for Roberson's misconduct

and would have to make restitution to Johnson. Soon thereafter, Guy was notified by Mutual's Human Resources Office that he would not receive an increase in his "guaranteed" salary. In January 1995, the sexual harassment letter was mistakenly distributed by a staff employee under Guy's supervision. The female employee who alleged she had been harassed told Guy she felt threatened, Guy rebuffed her, and she reported the conversation to Mutual.

On March 1, 1995, Guy met with Rooney, Bidroski, and Beach, and Rooney handed Guy the letter outlining areas of "continuing concern" that Mutual had with Guy's performance. The letter specified that Mutual was concerned about:

> Your [(Guy's)] apparent lack of understanding of the *personal and corporate liability* involved in communicating with the Tennessee Department of Insurance without notifying Agency Sales Management; and

> Your lack of judgement [sic] as a member of the Mutual of Omaha management team which was displayed in your communication involving the results of the sexual harassment allegation.

(Emphasis added.) At this meeting, Beach asked Guy if he was resigning from Mutual, after he expressed extreme disappointment about his pay reduction. In April 1995, while on "written notice," Guy admittedly made disparaging comments about Mutual to Larry Paylor. On April 19, 1995, after Paylor informed Mutual of Guy's comments, Mutual discharged Guy. Mutual told Guy that his discharge was due to his unacceptable performance as a general manager, but did not tell him that his discharge was due in part to his comments to Larry Paylor.

In *Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059 (E.D. Tenn. 1995), the plaintiff employee reported alleged irregularities in late 1992 or early 1993, which resulted in an audit on February 26, 1993. The results of the audit, critical of the employer, were mailed in early March 1993. The plaintiff was discharged on April 22, 1993, purportedly based on non-retaliatory reasons. The *Griggs* court observed that while it did not wish

> to establish any sort of time frame within which the termination of an employee would create any sort of presumption of a retaliatory discharge, the Court does observe that a more precipitous termination within a few days or a couple of weeks would better support a charge of retaliatory discharge than the five to six weeks lapse of time in this case.

*Id.* at 1064. The *Griggs* court concluded that the plaintiff did not make out a cause of action under the whistleblower statute or under the common law. *See Griggs*, 909 F. Supp 1059, 1064 (E.D. Tenn. 1995), and *Griggs*, 909 F. Supp. 1066, 1070 (E.D. Tenn. 1995). In this case, Mutual learned

15

that it was potentially liable to Johnson for Roberson's misconduct in November 1994, and Guy was not discharged until April 1995, approximately five months later.

Guy asserts that Mutual's "alleged non-retaliatory reasons for [his] discharge . . . were simply pretextual." He contends that the reasons given by Mutual were the result of Mutual's "campaign of retaliation" against him for reporting Roberson's misconduct and thereby exposing Mutual to liability for the fraud perpetrated against Johnson.

In *Chism*, the Tennessee Supreme Court stated that the retaliatory reason must be a "substantial factor" in the employee's dismissal in order to support an action for retaliatory discharge. *See Chism*, 762 S.W.2d at 556. In *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992), *perm. to app. denied*, April 27, 1992, this Court stated that in order to reach the jury on the question of whether the retaliatory reason was a substantial factor in the discharge, the employee must present either (1) direct evidence that the retaliatory reason was a substantial factor, such as an admission by the employer or proof that the employer had an express policy of discharging employees for the retaliatory reason, or (2) the employee must present "compelling circumstantial evidence" that the retaliatory reason was a substantial factor in his or her discharge. Mere proof that the employee participated in a "protected activity" and that the discharge followed is not sufficient to show that the retaliatory reason was a substantial factor, even if the proximity in time between the two events was very short. *See Austin v. Shelby County Gov't*, 3 S.W.3d 474, 481 (Tenn. Ct. App. 1999).

Guy's evidence in this case cannot be characterized as strong. He was fired some five months after Mutual learned it would have to pay restitution to Johnson, and Mutual's communication with Guy about the report admonishes Guy for communicating with the Department of Insurance "without notifying Agency Sales Management," which is consistent with Mutual's position. However, Guy is able to show that the adverse consequences to him began within a fairly short time after Mutual learned it would have to pay restitution, and Rooney's letter to Guy emphasizes the "personal and corporate liability" stemming from the report. Under these circumstances, we conclude that Guy has presented barely enough evidence from which the fact-finder could conclude that his report to the State of Roberson's fraud was a substantial factor in his discharge.

In sum, we find that any claim to which the whistleblower statute is applicable must meet the requirements of the statute. Any common law whistleblower claim would be subsumed within the whistleblower statute and its elements would not differ from the statutory requirements. This includes the requirement that the employee's refusal to participate in or remain silent about illegal activities be the sole reason for the employee's discharge. The whistleblower statute may apply, under certain circumstances, to claims involving the reporting of the illegal activities of a person other than the employer. However, the whistleblower statute does not apply to Guy's claim. At the time of Guy's report, Guy alleges that he did not know that Mutual could be found at fault for Roberson's fraud, and thus did not face the choice between reporting illegal activity and remaining employed. Guy states a common law claim for retaliatory discharge in violation of Tennessee public policy, actionable if he presents sufficient evidence that retaliation was a substantial factor in his discharge. In response

16

to Mutual's summary judgment motion, Guy presents barely enough evidence from which the trier of fact could conclude that retaliation was a substantial factor in his discharge. Therefore, the trial court's denial of Mutual's motion for summary judgment is affirmed.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, Mutual of Omaha Insurance Company, and its surety, for which execution may issue if necessary.

_____

HOLLY KIRBY LILLARD, J.

17