Charles Howard WATSON and Gilbert
Garner Barnett, Plaintiffs/Appellees,

v.

CLEVELAND CHAIR COMPANY,
Defendant/Appellant.

Supreme Court of Tennessee,
at Knoxville.

Dec. 4, 1989.

Denny E. Mobbs, Cleveland, Ind., for defendant, appellant.

R. Jerome Shepherd, Cleveland, Ind., for plaintiffs, appellees.

## OPINION

O'BRIEN, Justice.

Issues are raised in this case involving federal preemption under the Commercial Motor Safety Act, 49 U.S.C.App. 2301, et seq.; State Court Jurisdiction Over Federal Claims under the provisions of the Act, and the viability of a State cause of action for the retaliatory discharge of at-will employees.

Plaintiffs, Charles Howard Watson and Gilbert Garner Barnett, filed a complaint against defendant, Cleveland Chair Company, alleging that their discharge as employee truck drivers was precipitated because they attempted to excuse themselves from a dinner given by defendant due to prior arrangements they had made to have dinner elsewhere. It was further alleged that the reasons given for their discharge by the defendant were fraudulent and they were actually fired as a result of the culmination of bad relations between the parties caused by the wrongful, illegal and intentional acts set out in their complaint. They asserted that separation notices furnished by the defendants were defamatory and injured them in their reputations and ability to obtain other employment by charging plaintiffs were insubordinate, all in violation of T.C.A. § 50–7–711, the penal statute setting penalties for misrepresentation to prevent benefit payments or to evade contribution liability under the Employment Security Law.

The complaint further charged that defendants made unreasonable and unconscionable demands upon plaintiffs, at the peril of discharge, to break the speed laws and regulations of the several states and regulations of the Interstate Commerce Commission and the Department of Transportation as relative to rest and speed and to coerce them into falsifying trip logs, all of which constituted the tort of outrageous conduct. They say further they were discharged for refusal to socialize, voicing approval of a possible affiliation with a union and for complaining about being forced to drive illegally, all in violation of public policy. As a result of the foregoing related actions plaintiffs allege they suffered emotional distress.

The defendant filed a motion for summary judgment, accompanied by a supporting affidavit, asserting there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. The motion asserted that plaintiffs' complaint failed to state a claim upon which relief could be granted. The accompanying affidavit of William Ronald Jackson, President of Cleveland Chair Company, confirmed that plaintiffs were employed by it as truck drivers, averred they were terminated for insubordination, unacceptable attitude and inappropriate language and stated they were employees at-will.

Plaintiff Barnett filed an opposing affidavit on behalf of himself and plaintiff Watson conceding that one of the chief grievances defendant had against them was that each had tampered with the governing mechanism on the trucks driven by them to increase the speed on the vehicle which had been set at 62 mph. It alleged that the governing device was adjusted by plaintiffs because the company was forcing its drivers to run in excess of ten (10) hours [a day] following eight (8) hours off duty and more than sixty (60) hours in any seven (7) consecutive days in violation of the maximum driving and off duty time set out in Federal Highway Administration Regulations 395.3, 392.6, 395.8(a)(3), 392.3 and 398.4(c), rules promulgated under U.S.C. Title 49, Sec. 301 et seq. That defendant's insistence upon plaintiffs breaking Federal Highway Administration regulations constituted an illegal violation of Regulations 392.6 (schedules to conform with speed limits) and 391.7 (aiding and abetting). The affiant further deposed that defendant, through its agents, forced plaintiffs to falsify log entries in order to meet their running demands in violation of Sec. 395.8(a)(b) which constituted further illegal acts by the carrier and the driver. It was averred that defendant willfully and intentionally inflicted emotional distress upon its drivers to force them into violating the subject regulations of the Federal Highway Administration.

The trial court dismissed plaintiffs' complaint upon defendant's motion and the evidence introduced by affidavit. Plaintiffs appealed.

The Court of Appeals, noted the long standing rule in this State that an employee at-will can be discharged for good cause, for no cause, or even for cause morally wrong without being guilty of a legal wrong. *Payne v. Western and Atlantic Railroad Company*, 81 Tenn. (13 Lee), 507 (1884); *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395 (Tenn.App.1981). They recognized the only exception this Court has made to that rule. In *Clanton v. Cain–Sloan Company*, 677 S.W.2d 441, 445 (Tenn.1984), the Court held that, "a cause of action for retaliatory discharge, although not explicitly created by the statute, [T.C.A. § 50–6–114] is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature. A statute need not expressly state what is necessarily implied in order to render it effectual." (Citations omitted). Citing an unreported opinion of that court, as well as various decisions from other jurisdictions, the intermediate court found that a cause of action for retaliatory discharge arises when an at-will employee is terminated solely for refusing to participate, continue to participate, or remain silent about illegal activities.

They reasoned that although there is strong public policy in Tennessee and apparently throughout the south for not recognizing exceptions to the employment at-will rule they did not believe a further exception to the rule would adversely affect the quality of the lives of our citizens but rather would remove unfortunate employees from the untenable position of having to violate the law or lose their means of support for themselves and their family. They opined that the adoption of a further exception would promote the overriding public policy that the people of this State should be encouraged to be law-abiding citizens.

■ We agree in principle with the expressed views of the lower court, however we are of the opinion that only in the most extraordinary circumstances should the courts of this State impose their judgment in an area which, in the first instance, is clearly a legislative function. A definitive statement on the authority of the courts to determine public policy can be found in *Nashville Ry. and Light Co. v. Lawson*, 144 Tenn. 78, 91, 229 S.W. 741 (1920), citing from *License Tax Case*, 5 Wall, 469, 18 L.Ed. 497:

"This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.

There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what the public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established."

In *Smith v. Gore*, 728 S.W.2d 738, 747 (Tenn.1987) the Court stated the principle in these words:

The public policy of Tennessee "is to be found in its constitution, statutes, judicial decisions and applicable rules of common law. *Home Beneficial Assn. v. White*, 180 Tenn. 585, 177 S.W.2d 545 (1944)." *State ex rel. Swann v. Pack*, 527 S.W.2d 99, n. 17 (Tenn.1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976). *See also Lazenby v. Universal Underwriters Ins. Co., supra*, 214 Tenn. [639] at 648, 383 S.W.2d [1] at 5 [1964]. In *Home Beneficial Association v. White, supra*, this Court recognized that " '[t]he meaning of the phrase "public policy" is vague and variable; courts have not defined it, and there is no fixed

rule' " upon which it may be readily discerned. 180 Tenn. at 589, 177 S.W.2d at 546 (citation omitted). Moreover,

> " 'only in the absence of any declaration in [the Constitution and statutes] may [public policy] be determined from judicial decisions ... All questions of policy are for the determination of the legislature, and not for the courts.... Where courts intrude into their decrees their opinion on questions of public policy, they in effect constitute the judicial tribunals as lawmaking bodies in usurpation of the powers of the legislature.' "

*Cavender v. Hewitt,* 145 Tenn. 471, 475–476, 239 S.W. 767, 768 (1921) (citation omitted). *See also Baptist Memorial Hosp. v. Couillens,* 176 Tenn. 300, 311–312, 140 S.W.2d 1088, 1093 (1940).

For the Court to find that no public policy prevents the continuing development of the common law is wholly different from positively declaring the public policy of the State. *Cf. Cardwell v. Bechtol,* 724 S.W.2d 739 (Tenn.1987); *Davis v. Davis,* 657 S.W.2d 753 (Tenn.1983); *Luna v. Clayton,* 655 S.W.2d 893 (Tenn. 1983). This observation is especially pertinent to any case in which the Court must determine which of several competing public policies represents the most compelling and controlling public policy for this State. The Court simply does not function as a forum for resolution of such generalized public issues; rather, it must decide the legal case or controversy presented by the particular parties before it.

The second issue raised on the plaintiffs' first appeal (whether the employee's termination for refusing to violate the law constituted outrageous conduct) was found against the plaintiffs by the Court of Appeals. That court expressed the belief that the discharge of an employee at-will who refuses to engage in illegal activity does not rise to the level necessary to constitute outrageous conduct, even though an action may exist for wrongful discharge. No appeal was taken from that decision, therefore the decision of the appellate court became the law of the case. *Pierce v.*

*Tharp,* 224 Tenn. 328, 457 S.W.2d 529, 530 (1970).

On remand the defendant filed a motion to dismiss on the premise that the subject matter of the plaintiffs' cause of action for retaliatory discharge charging the employer with violations of the rules and regulations of the Department of Transportation and the Interstate Commerce Commission had been preempted by federal law as codified in 49 U.S.C.App. § 2305(a), (b), known as the Surface Transportation Assistance Act of 1982. It was further averred that the plaintiffs had failed to exercise or exhaust their administrative remedies for retaliatory discharge as provided in 49 U.S.C. App. § 2305(c), (d). The trial court ruled on the motion, found it to be well taken and held the court was without jurisdiction because the subject matter of the case had been preempted by 49 U.S.C.App. § 2301, et seq. Plaintiffs took the case to the Court of Appeals on this issue.

The Court of Appeals, after reviewing legislative history of the Motor Carrier Safety Act, specifically § 2305, found there was no explicit statutory directive that provided an exclusive remedy for plaintiffs which would preempt Tennessee common law in regard to an action for retaliatory discharge. They expressed the view that the Act was not intended to preempt the entire field of Interstate Highway Safety or preempt any State statute or regulation, the implementation of which would be compatible with the implementation of a federal regulation. They found no incompatibility between Tennessee common law and the federal statute. They reversed the trial court and remanded the case for trial on its merits.

A T.R.A.P. 11 application by defendant for permission to appeal to this Court was granted. The application propounded several issues, primarily questioning (1) whether the Court of Appeals was correct in reversing the trial court judgment that the subject matter of the case had been preempted by that portion of 49 U.S.C.App. § 2305(a), (b), known as the Surface Transportation Assistance Act of 1982; (2) the correctness of the intermediate court ruling

that the State's common law relating to retaliatory discharge was not preempted by the Surface Transportation Assistance Act. In granting the application the court requested the parties to brief certain questions, i.e., (1) whether State courts have jurisdiction over claims brought pursuant to 49 U.S.C.App. § 2305 and whether the provisions of that statute preempt State law; (2) generally, whether a cause of action for retaliatory or wrongful discharge may be maintained when an employee at-will is terminated solely for refusing to participate in illegal activity.

In considering the propriety of state-court jurisdiction over any particular federal claim, we begin with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests. See *Gulf Offshore Company v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981); *Devine v. Bank*, 125 Tenn. 98, 108, 140 S.W. 747 (1911).

The supremacy clause of Art. VI of the Constitution provides Congress with the power to preempt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), when there is outright or actual conflict between federal and state law, e.g., *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Preemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). See *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986).

In *Garner v. Teamsters, Chauffeurs and Helpers, etc.*, 346 U.S. 485, 74 S.Ct. 161, 168, 98 L.Ed. 228 (1953), the Court made these pertinent comments:

"It often is convenient to describe particular claims as invoking public or private rights, and this handy classification is doubtless valid for some purposes...."

"Statutes may be called public because the rights conferred are of general application, while laws known as private affect few or selected individuals or localities. Or public rights may mean those asserted by the state as a party either in criminal or civil proceedings...."

"Federal law has largely developed and expanded as public law in this latter sense. It consists of substituting federal statute law applied by administrative procedures in the public interest in the place of individual suits in courts to enforce common-law doctrines of private right...."

"[w]hen federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. To the extent that the private right may conflict with a public one, the former is superseded. To the extent that public interest is found to require official enforcement instead of private initiative,

the latter will ordinarily be excluded. Of course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by expressed terms, or by some clear implication, if it sees fit."

■ Sec. 405 (49 U.S.C.App. 2305), of Title IV, Surface Transportation Assistance Act of 1982, in pertinent part provides as follows:

(a) No person shall discharge, discipline, or in any manner discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because such employee ... has filed any complaint or instituted or caused to be instituted any proceeding relating to a violation of a Commercial Motor Vehicle Safety Rule, regulation, standard, or order, or has testified or is about to testify in any such proceeding.

(b) No person shall discharge, discipline, or in any manner discriminate against an employee with respect to the employee's compensation, terms, conditions, or privileges of employment for refusing to operate a vehicle when such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, or because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe conditions of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.

(c)(1) An employee who believes he has been discharged, disciplined, or otherwise discriminated against by any person in violation of subsection (a) or (b) of this section may, within 180 days after such alleged violation occurs, file ... a complaint with the Secretary of Labor alleging such discharge, discipline, or discrimination....

The remainder of Sec. 405 goes on to explain the duties of the *Secretary of Labor* to make an investigation, hold a hearing in the event, in his opinion, a violation has occurred, and provides remedial action in the form of reinstatement of the complainant, and concludes with the provision that "An order of the Secretary of Labor, with respect to which review could have been obtained under this section, shall not be subject to judicial review in any criminal or other civil proceeding." The section contains the proviso that whenever a person has failed to comply with an order issued by the *Secretary of Labor* that officer shall file a civil action in the U.S. District Court for the district in which the violation occurred.

The District Court shall have jurisdiction to grant all appropriate relief, including injunctive relief, reinstatement, and compensatory damages.

In conjunction with the foregoing § 405, it is provided in § 402 that the *Secretary of Transportation* is authorized to make grants to States for the development or implementation of programs for the enforcement of Federal rules, regulations, standards and orders applicable to commercial motor vehicle safety and compatible State rules, regulations, standards and orders. Under his direction the States are authorized to submit plans whereby they agree to adopt, and assume responsibility for enforcing Federal rules etc. The plan is to be approved by the Secretary if, in his judgment, the plan is adequate to promote the objectives of the section. § 402 prescribes explicit procedures and requirements for any plan submitted by the several States, for continued evaluation of the plan by the *Secretary of Transportation* and withdrawal of the plan if it does not follow or becomes inadequate to insure the enforcement of Federal rules, regulations, etc.

It is evident from the provisions of the Act that Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide the primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice; and hearing and decision, including denial of review in any criminal or other civil proceeding of any order of the *Secretary of Labor* and further specifying his authority to file a civil action in the United States District Court in order to enforce any orders promulgated by him. § 405 further provides for civil action for persons falling within the scope of its provisions. See *Garner v. Teamsters,* supra, 74 S.Ct. at p. 165; § 405(e).

We are of the opinion that Congress, explicitly and implicitly, confined jurisdiction under the Act to the administrative and judicial procedures to be exercised by the *Secretary of Labor* in accordance with § 405. We are fortified in this conclusion by the fact that neither this State, nor any other to the best of our knowledge, has endeavored to assert concurrent jurisdiction over claims brought pursuant to the Act. See *Gulf Offshore Co.,* supra, 101 S.Ct. at 2875.

We have heretofore in this opinion discussed the question of whether a cause of action for retaliatory or wrongful discharge may be maintained when an employee at-will is terminated solely for refusing to participate in or remain silent about illegal activity. We have written at some length on this issue in *Chism v. Mid–South Milling Co., Inc.,* 762 S.W.2d 552, 556 (Tenn.1988). We have expressed our accord with the opinion of the Court of Appeals, that a cause of action for retaliatory discharge arises when an at-will employee is terminated solely for refusing to participate, continue to participate, or remain silent about illegal activities. However, in reference to this case, we believe the plaintiffs' remedies lie within the parameters of the Surface Transportation Assistance Act of 1982. We do not agree that it is appropriate for the courts of this State to establish public policy or adopt an exception to the common-law by placing our imprimatur thereon in the absence of some constitutional or legislative precedent.

In response to the direct question presented by appellant's brief, that is, was the Court of Appeals correct in reversing the trial court's dismissal of the complaint because it lacked jurisdiction of the subject matter, we have stated our conclusion that it was the intent of Congress for the Surface Transportation Assistance Act of 1982 to prevail over State safety regulation.

We find a further problem with the Court of Appeals' judgment in the case. It was the theory of that court that it was not the intent of Congress to supplant this State's common-law regarding retaliatory discharge and replace it with mandatory and exclusive statutory provisions in enactment of the Surface Transportation Assistance Act. Absent that court's prior judgments making exceptions to the employment at-will rule, there was no established common-law rule relating to retaliatory discharges under the circumstances of this case. Nor, insofar as this record is concerned, has Tennessee ever submitted any plan to the *Secretary of Transportation* to develop or implement any program for the enforcement of any Federal rule, regulation, standard, or order applicable to the Commercial Motor Vehicle Safety Act. Therefore, there was not any common-law or statutory rule in existence to sustain the plaintiffs complaint.

We affirm the judgment of the trial court dismissing the complaint, for the reasons stated in this opinion. The costs of this appeal are taxed to the appellant. The case is remanded to the trial court for the collection of its costs and any other procedures which may be required.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ.