IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 17, 2009 Session

## DANIEL SANDERS v. HENRY COUNTY, TENNESSEE

Direct Appeal from the Circuit Court for Henry County
No. 2895      Donald E. Parish, Judge

---

No. W2008-01832-COA-R3-CV - Filed April 21, 2009

---

This appeal involves a statutory retaliatory discharge claim pursuant to Tennessee Code Annotated section 50-1-304. The trial court granted summary judgment to the employer, finding that the employee failed to establish that he had refused to participate in or remain silent about "illegal activities," within the meaning of the statute. The employee appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

James L. Harris, Nashville, TN, for Appellant

Brandon O. Gibson, Jackson, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Daniel Sanders ("Plaintiff") began working as a county employee at the Henry County Recycling Plant in 1999. Plaintiff was employed as a route driver to pick up recyclable materials from business locations throughout the county. Plaintiff's supervisor was Alvin Misker, the solid waste director. In 2001, Mr. Misker promoted Plaintiff to a foreman position, in which Plaintiff supervised approximately ten employees and supervised the transportation of the inmate workforce from the jail to the recycling facility. However, Plaintiff remained subject to the supervision of Mr. Misker.

In late November or early December of 2005, Mr. Misker scheduled a meeting with the county mayor, Brent Greer, and Plaintiff in order to discuss Plaintiff's poor attitude. Mr. Misker claimed to have observed problems arising from Plaintiff's poor work attitude and inability to communicate with his co-workers and the inmate workforce in a courteous and professional manner. According to Mayor Greer, he had also been receiving complaints from various workers at the recycling plant regarding Plaintiff's attitude, demeanor, and treatment of his co-workers. During this meeting, Plaintiff reported to Mayor Greer that he had observed Mr. Misker using the computer at his office to view personal, non-work-related emails containing what Plaintiff considered to be inappropriate or pornographic pictures. Plaintiff also discussed other actions taken by Mr. Misker which Plaintiff deemed inappropriate.

Following the meeting, Plaintiff continued to work at the foreman position for approximately six more months. However, according to Mr. Misker, Plaintiff continued to exhibit a demeaning attitude toward his co-workers and the inmate workforce. In May of 2006, the assistant foreman at the recycling plant was promoted to Plaintiff's position as foreman on a two-week trial basis. The assistant foreman was then promoted to foreman on a permanent basis, and Plaintiff was demoted to truck driver. According to Mr. Misker, Plaintiff continued to exhibit a poor attitude following the demotion, and Plaintiff's employment was terminated on May 24, 2006.

On September 28, 2006, Plaintiff filed a complaint in circuit court against Henry County, alleging that he was terminated "solely because Plaintiff refused to participate in and/or refused to remain silent about illegal activities within the meaning of TCA 50-1-304(a) and (c) and the common law of Tennessee."[1] Specifically, Plaintiff claimed he was fired solely because he reported Mr.

---

[1] Tennessee Code Annotated section 50-1-304 provides, in relevant part:

(a) As used in this section:
. . .
    (3) "Illegal activities" means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
. . .

(continued...)

Misker for "using a computer terminal owned by Henry County for personal purposes, and to view hardcore pornography, on county time and in the course and scope of his employment."

Henry County filed a motion to dismiss, which was granted as to Plaintiff's common law claim for retaliatory discharge, but denied as to the statutory claim pursuant to Tennessee Code Annotated section 50-1-304. The parties engaged in discovery, and Henry County then filed a motion for summary judgment on the statutory claim. Relying upon various affidavits and deposition testimony, Henry County argued that Plaintiff was unable to establish that he reported "illegal activities" within the meaning of Tennessee Code Annotated section 50-1-304. Henry County further alleged that Plaintiff could not establish an exclusive causal connection between his report to Mayor Greer and his termination six months later.

During Plaintiff's deposition, he was asked to describe the pictures he viewed on Mr. Misker's computer, to which he responded, "Well, scantily-clad women, sometimes not clothed. The format for a lot of these were something comical, climbing in and out of a car or a truck." Plaintiff also described two other incidents involving Mr. Misker, which Plaintiff deemed inappropriate. The first involved a heavy-duty trailer owned by Plaintiff, which he loaned to the county for transporting materials on several different occasions. Plaintiff claimed that after the county used the trailer several times, Mr. Misker noticed that the tires on the trailer were in bad condition, and he told Plaintiff to order new tires for the trailer, at the county's expense, "to make it safer to transport the county equipment," which Plaintiff did. The second incident involved a female friend of Mr. Misker and Plaintiff, who often visited them at the recycling center. Plaintiff claimed that on one occasion when the woman visited the recycling center, Mr. Misker gave her several pairs of underwear. Plaintiff said that he complained to Mayor Greer about these two incidents as well. However, Plaintiff stated that he believed the sole reason for his termination was that he reported Mr. Misker for viewing pornographic pictures.

Mayor Greer was also deposed. He stated that when Plaintiff told him about Mr. Misker viewing allegedly pornographic pictures, Plaintiff also told him that another employee had knowledge about the pictures. Mayor Greer asked the other employee and a female employee whether they had ever observed pornographic pictures on Mr. Misker's computer. These other employees dismissed the issue quickly and explained that they had only seen "a joke picture of some obese women sitting on the tailgate of a pickup truck." Mayor Greer stated in his deposition, "I did tell Mr. Misker that personal e-mails and different things coming in was something he needed to be concerned about. But we did not have any policy in place and still do not have any policy in place dealing with personal use of the computer by county employees." Mayor Greer also submitted an affidavit stating that Henry County had no policy or regulation, written or unwritten, regarding the personal use of county-owned computers or the content and subject matter that could be observed on such computers. Mayor Greer conceded at his deposition that it was "not a good practice" to view

[1](...continued)
(d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

anything on a government computer that was not related to work, and he acknowledged that any time an employee spends time at work doing personal tasks, it could be viewed as a waste of taxpayers' money. However, Mayor Greer described these problems as "common in the workplace whether it be in our county government, in the private sector, or anything." Mayor Greer stated that he never considered Plaintiff's complaint about Mr. Misker's actions as a factor in the decision to terminate his employment.

Another employee at the recycling plant testified by deposition that he had observed pictures of women on Mr. Misker's computer, but he said none of the women were bare breasted. He described the pictures he saw as "very large women, 7-foot tall" wearing "little clothes." Another employee stated during his deposition that he had observed pictures of women on Mr. Misker's computer either wearing no clothes or very little clothes.

Mr. Misker admitted during his deposition that he occasionally used his office computer to send personal emails, and he conceded that he had received pictures via email of scantily dressed women. Mr. Misker stated that Henry County did not have any written or unwritten policy regarding the content, subject matter, or personal use of county-owned computers. Mr. Misker claimed that he did not consider Plaintiff's complaint regarding his personal use of the computer as a factor in the decision to terminate Plaintiff. Mr. Misker claimed that Plaintiff continued to exhibit a bad attitude, while the assistant foreman was better at performing job duties than Plaintiff. Mr. Misker said he decided to promote the assistant foreman on a trial basis in order to "try a different tactic . . . to smooth out the operation."

Plaintiff submitted affidavits and excerpts from depositions of several people who worked with him at the recycling plant at various times between 2001 and 2006. These co-workers generally stated that Plaintiff demonstrated a positive attitude at work and was never demeaning to them.

Plaintiff filed a memorandum in response to Henry County's motion for summary judgment, claiming that "[t]he pornography was not the only illegal act taking place that Plaintiff reported." He claimed that he also complained to Mayor Greer about the issues involving the tires and the underwear.

Plaintiff also submitted a response to Henry County's statement of undisputed facts, with numerous "attachments." One of those attachments is a single-page document entitled, "Henry County, Tennessee – Acceptable Policies and Use Agreement for Computer Services, Internet Access, and Electronic Mail." The first sentence of the document reads, "All computer hardware and software used by the Office of Trustee are the property of Henry County." The document goes on to state that all email, documents, and material generated on "these computer systems" are the property of Henry County and may be reviewed by Henry County at any time, and access to unacceptable Internet sites will not be tolerated. The document states, "As a user, I agree to the following guidelines," and it lists use guidelines and designates a line for "User's signature," but the document is unsigned. None of the witness deposition testimony or affidavits in the record refer to this document. However, Plaintiff submitted his own affidavit stating, "Subsequent to my

termination, I discovered that there was, in fact, a policy within the Henry County government which stated, in no uncertain terms, that pornography on a workplace computer is prohibited." Presumably, Plaintiff was referring to this "use agreement."

On June 6, 2008, the trial court entered an order granting summary judgment to Henry County. First, the court noted that Plaintiff had attempted to raise an additional issue regarding the tires in response to Henry County's motion for summary judgment. The trial court found that "this issue is not supported by the Plaintiff's own deposition testimony and will not be addressed further by the Court." The court cited the pages of Plaintiff's deposition where Plaintiff stated that he believed the "sole reason" for his firing was "reporting the pornography."

Next, the court found that Mr. Misker's viewing of a personal, inappropriate email message "was not contrary to law" within the meaning of Tennessee Code Annotated section 50-1-304. The court found that the "use agreement" attached to Plaintiff's response to the statement of undisputed facts appeared limited in its application to the Office of the Trustee, and the court found nothing in the record to indicate a connection between the Office of the Trustee and the Henry County Recycling Center. Nevertheless, the court found that even if the policy was applicable county-wide, it was still "not of the character anticipated by the statutory definition of 'illegal activity'" in Tennessee Code Annotated section 50-1-304. Because Plaintiff failed to establish that he reported or remained silent about an "illegal activity," the court found that summary judgment was proper.

Plaintiff filed a motion to alter or amend, which was denied. He then timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, Plaintiff presents three issues for review, which we combine and restate as follows:

> Whether the trial court erred in granting summary judgment based on Plaintiff's failure to meet his burden of production as to the "illegal activity" element of the Tennessee Public Protection Act, considering the "use agreement" presented by Plaintiff and his belief that he was reporting illegal actions.

Alternatively, Henry County contends that summary judgment was proper because there was no causal connection between Plaintiff's complaint and his termination. For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

The moving party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." **Martin v. Norfolk S. Ry. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). "[T]o negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). We review the trial court's ruling on a motion for summary judgment de novo, with no presumption of correctness. **Johnson v. LeBonheur Children's Med. Ctr.**, 74 S.W.3d 338, 342 (Tenn. 2002). "The evidence must be viewed 'in the light most favorable to the nonmoving party,' giving the nonmoving party the benefit of all reasonable inferences." *Id.* (quoting *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

Tennessee has long adhered to the doctrine of employment-at-will, which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. **Guy v. Mut. of Omaha Ins. Co.**, 79 S.W.3d 528, 534-35 (Tenn. 2002); **Stein v. Davidson Hotel Co.**, 945 S.W.2d 714, 716 (Tenn. 1997). By statute and case law, however, some restrictions have been imposed on the right of an employer to terminate an at-will employee. **Stein**, 945 S.W.2d at 716. Our Supreme Court first recognized a common-law retaliatory discharge cause of action in **Clanton v. Cain-Sloan Co.**, 677 S.W.2d 441, 442 (Tenn. 1984), where an employee was discharged for exercising his rights under the workers' compensation law. The Court found that to allow an employee to be discharged for filing a workers' compensation claim would "completely circumvent" the legislative scheme; thus, a retaliatory discharge cause of action was necessary to carry out the legislature's intent. *Id.* at 444-45. The Supreme Court later clarified, however, that an action for retaliatory discharge is a limited exception to the employment-at-will doctrine, which "cannot be permitted to consume or eliminate the general rule." **Chism v. Mid-South Milling Co., Inc.**, 762 S.W.2d 552, 556 (Tenn. 1988). "To be liable for retaliatory discharge," the Court explained, "the employer must violate a clear public policy. Usually this policy will be evidenced by an unambiguous constitutional, statutory or regulatory provision." *Id.*

In **Chism**, for example, an employee was fired after disagreements with his employer over whether the employer was violating several provisions of the Internal Revenue Code. *Id.* at 553. The employee filed a retaliatory discharge action claiming that he was terminated for failing to participate in or remain silent about illegal activities, but he did not specifically refer to any statutory

provisions or sections of the Internal Revenue Code that were allegedly being violated. *Id.* at 554. The Supreme Court affirmed the trial court's grant of summary judgment in favor of the employer, finding that the complaint demonstrated no more than a simple disagreement between the employer and the employee regarding the interpretation of the Internal Revenue Code. *Id.* at 553. The Court explained that "management has the right to terminate an employee over management and policy decisions, so long as the employer does not violate any clearly established public policy in doing so."[2] *Id.* at 555. A cause of action for retaliatory discharge "is not available to every disappointed or disgruntled employee or officer." *Id.* at 557.

In sum, the common law tort of retaliatory discharge "is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy." *Stein*, 945 S.W.2d at 717 (citations omitted). To prevail on a common law retaliatory discharge claim, the employee must prove: "(1) that an at-will employment relationship existed between the employee and the employer, (2) that the employee was discharged, (3) that the employee was discharged for attempting to exercise a statutory or constitutional right, or for any other reason that violates a clear public policy, and (4) that such action was a substantial factor in the employer's decision to discharge the employee." *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007).

There is also a statutory exception to the employment-at-will doctrine. In 1990, the legislature passed the Tennessee Public Protection Act, commonly referred to as the "whistleblower statute," which provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." **Tenn. Code Ann. § 50-1-304(b) (2008).** The Code defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." **Tenn. Code Ann. § 50-1-304(a)(3) (2008).** Under the whistleblower statute, the employee must prove that his or her refusal to participate in or remain silent about illegal activities was the *sole* reason for his or her discharge, whereas, under the common law, such action must only be a substantial factor in the employer's decision to discharge the employee. *Collins*, 241 S.W.3d at 884. Accordingly, the four elements of an employee's statutory retaliatory discharge claim are: "(1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). Under both the statute and the common law, the employee must assert that his or her whistleblowing activity "serves a public purpose [that] should be protected," rather than merely his or her private interest. *Guy*, 79 S.W.3d at 538, n.4.

_____

[2] The *Chism* Court cited several cases involving "[e]xamples of clearly defined public policies which warrant the protection provided by [the retaliatory discharge] cause of action," including an employee's refusal to commit perjury, an employee's insistence upon obeying a lawful subpoena, an employee's refusal to seek to be excused from jury duty, and refusals to falsify records or acquiesce in the mislabeling of unsafe or defective products. *Id.* at 556 (citations omitted). The Court emphasized that "[i]n each of these cases, . . . very specific statutory violations were charged, and usually the employee's personal exposure to civil or criminal sanctions was emphasized." *Id.*

In the case before us, Plaintiff has not appealed the trial court's dismissal of his common law retaliatory discharge claim. Therefore, we are limited to determining whether Plaintiff established the essential elements of his statutory claim. It is undisputed that Plaintiff was an employee of Henry County and that he was discharged. The remaining issues, then, are whether Plaintiff refused to participate in or remain silent about "illegal activities," as defined by the statute, and, if so, whether an exclusive causal relationship existed between his refusal and his termination. "Courts have recognized 'that the plaintiff has indeed a formidable burden in establishing elements two and four of the cause of action.'" *Hill v. Perrigo of Tenn.*, No. M2000-02452-COA-R3-CV, 2001 WL 694479, at \*5 (Tenn. Ct. App. June 21, 2001) (quoting *Darnall v. A+ Homecare, Inc.*, No. 01A01-9807-CV-0034, 1999 WL 346225, at \*5 (Tenn. Ct. App. M.S. Jun. 2, 1999)).

First we will address whether Plaintiff engaged in a protected activity, i.e., whether he refused to participate in or remain silent about illegal activities. **Tenn. Code Ann. § 50-1-304(b) (2008).** The statute defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." **Tenn. Code Ann. § 50-1-304(a)(3) (2008).** Again, Plaintiff testified by deposition that he believed he was terminated solely for "reporting the pornography." Throughout these proceedings, Plaintiff has pointed to no "violation of the criminal or civil code of this state or the United States" by Mr. Misker or Henry County. *See* **Tenn. Code Ann. § 50-1-304(a)(3) (2008).** Although Plaintiff's complaint alleged that he observed Mr. Misker viewing "hardcore pornography," Plaintiff stated in his deposition, "I don't know what the official definition of hardcore pornography is, I just was offended to be summoned to his office to see these things on the computer. It didn't concern me. It didn't concern my job or anything that was going on there." Plaintiff described the email pictures on Mr. Misker's computer as mostly "comical," displaying "scantily-clad women, sometimes not clothed." We point this out to clarify that there is no allegation by Plaintiff that he observed Mr. Misker viewing child pornography or some other material in violation of the law.

As such, we are left with the issue of whether the reported activity violated a "regulation intended to protect the public health, safety or welfare." *See* **Tenn. Code Ann. § 50-1-304(a)(3) (2008).** Plaintiff claims that the unsigned, undated "use agreement" he attached to his response to the statement of undisputed facts constitutes such a regulation. We disagree. As the trial court noted, the use agreement appears, by its terms, to be limited to the Henry County Office of the Trustee. Plaintiff submitted no evidence to suggest that the use agreement was ever applicable county-wide or to the Henry County Recycling Plant. There is nothing in the record to suggest that any of the parties at issue here signed the use agreement, and Plaintiff's affidavit clearly stated that he was unaware of the existence of the document until after he was terminated. Also, Mayor Greer testified unequivocally that Henry County had no policy or regulation, written or unwritten, regarding the personal use of county-owned computers or the subject matter of content viewed on such computers.

In any event, however, we conclude that Mr. Misker's alleged violation of the use agreement does not rise to the level of an illegal activity within the meaning of Tennessee Code Annotated

section 50-1-304. In order to prevail on a statutory retaliatory discharge claim, employees must prove "more than that their employer violated a law or regulation. They must prove that their efforts to bring to light an illegal or unsafe practice furthered an important public policy interest, rather than simply their personal interest." *Collins*, 241 S.W.3d at 885 (citations omitted).

We have previously held that not every regulatory violation constitutes an "illegal activity" within the meaning of Tennessee Code Annotated section 50-1-304. In *Franklin*, 210 S.W.3d at 523, a truck driver was fired after he refused to drive his employer's truck to deliver merchandise when the employer only had a photocopy of the registration card in the truck, not the original registration card. The truck driver filed a statutory retaliatory discharge claim, asserting that he was fired for refusing to participate in an illegal activity. *Id.* at 528. A regulation issued by the Tennessee Department of Safety required that the original card be kept in the vehicle. *Id.* at 529. Still, we explained that "the 'illegal activity' or violation by the employer must implicate important public policy concerns as well." *Id.* at 530. The cause of action for retaliatory discharge is a narrow exception to the employment-at-will doctrine, applicable only in limited circumstances. *Id.* We stated, "Finding that *any* regulatory infraction by an employer, no matter how minor, can support a claim of retaliatory discharge would be a clear extension of the law, well beyond the boundaries of any prior Tennessee decision." *Id.* at 532. We then concluded that the regulatory infraction involved in *Franklin* did not implicate important or fundamental public policy concerns. *Id.* at 533. Rather, it was "one of the many regulations that impose 'requirements whose fulfillment does not implicate fundamental public policy concerns.'" *Id.* (quoting *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 659 (9th Cir. 1992)).

We similarly conclude that Plaintiff's complaint regarding Mr. Misker's personal use of his office computer does not implicate fundamental public policy concerns, and it does not rise to the level of a protected report of "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." **Tenn. Code Ann. § 50-1-304(a)(3) (2008).**

Next, Plaintiff contends that regardless of the legality or illegality of Mr. Misker's actions, he can maintain a claim under the whistleblower statute so long as he reasonably believed that Mr. Misker's actions were illegal. Our Supreme Court has stated that "[t]he statute's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997) (citing *Melchi v. Burns Int'l Sec. Servs., Inc.*, 597 F.Supp. 575, 583 (E.D. Mich 1984)).[3]

---

[3] In *Mason*, a hotel employee called the fire department when her employer insisted on locking two of the three doors in a laundry room containing gas fired dryers, which had previously caught fire. *Id.* at 471. In support of her retaliatory discharge claim, the hotel employee submitted the testimony of an industrial safety expert, who testified that locking both doors would have created a dangerous condition and was a violation of 29 C.F.R. § 1910.36(b)(4) (1996). *Id.* The Supreme Court held that the expert's testimony was "sufficient evidence of illegal activity to overcome the motion for summary judgment." *Id.* However, the Court went on to state that the whistleblower statute protects employees "who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and (continued...)

Plaintiff does not claim that he was aware of any law, regulation, or rule which he believed Mr. Misker was violating. Plaintiff simply argues that "all that is required" is that he had a reasonable belief that the actions were "illegal." Plaintiff claims that he reported "what [he] perceived as illegal activities in the work place." He basically claims that he thought Mr. Misker's actions were wrong, and his brief attempts to support his assertion with a discussion of taxpayers' rights, cases dealing with pornography and obscenity, and a reference to Mayor Greer's statement that it is not "good practice" to view non-work-related material while working. However, we find that the Court's statement in **Mason** does not extend to the lengths urged by Plaintiff. Plaintiff did not establish the essential elements of his claim for statutory retaliatory discharge simply by claiming that he thought Mr. Misker's actions were wrong.

As stated above, an employee has to meet a "formidable burden" in establishing this element of the whistleblower statute. **Hill**, 2001 WL 694479, at *5; **Darnall**, 1999 WL 346225, at *5. From our review of the cases applying the statute, an employee cannot meet this burden simply by claiming that he believed his employer's actions were "wrong" or against "public policy." In **Stein**, 945 S.W.2d at 716, the Supreme Court considered an employee's claim that she was wrongfully discharged "in violation of public policy." The Court stated that "Tennessee courts do not, in the context of wrongful discharge actions, attempt to discern public policy from the common law" or "engage in hypothetical guessing to fashion public policy." **Id.** at 717. The Court explained,

> This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.
> There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established.

**Id.** (quoting *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 540 (Tenn. 1989)). The Court held that in order for the plaintiff-employee to prevail, he or she must point to a "clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision[.]" **Id.**

In **Gager v. River Park Hospital**, No. M2007-02470-COA-R3-CV, 2009 WL 112544, at *1 (Tenn. Ct. App. Jan. 14, 2009), a nurse practitioner sued her former employer, a hospital, for

---

[3](...continued)
in good faith report it." **Id.** (citing *Melchi v. Burns Int'l Sec. Servs., Inc.*, 597 F.Supp. 575, 583 (E.D. Mich 1984)).

We note that the Michigan Whistleblowers' Protection Act discussed in **Melchi** prohibited the discharge of an employee for "reporting a violation or a *suspected* violation of a law or regulation or rule." 597 F.Supp. at 580 (quoting M.C.L. § 15.362) (emphasis added).

common law and statutory retaliatory discharge, claiming she was terminated as a result of her "refusal to remain silent" about an "illegal and ill-advised policy" implemented by the hospital regarding when nurses could call physicians. *Id.* at *1. Specifically, the nurse practitioner alleged that the hospital policy "served not only to endanger the health of patients but also [were] in contravention of Tennessee statutory, common and regulatory law and Tennessee's explicit public policy." *Id.* at *4. The trial court granted summary judgment to the hospital, and the Court of Appeals affirmed, explaining:

> Ms. Gager has failed to identify the law and policy that she contends was contravened by the mandate in the letter or what activities of River Park were illegal; the quoted provisions from her affidavit reveal only a policy implemented by River Park with which Ms. Gager disagreed. The fact that there may be a dispute between an employee and the employer regarding workplace procedures does not, in and of itself, trigger a common law retaliatory discharge claim. . . .

> In regards to Ms. Gager's claim that she was terminated in violation of the Tennessee Whistleblower Statute, Tenn. Code Ann. § 50-1-304, the trial court held:

>> [T]he Plaintiff has come forward with no proof that the Defendant, Southeastern Emergency Services, P.C., retaliated against the Plaintiff for failure to follow "illegal and ill-advised" rules and regulations set forth by River Park. The only proof in the record regarding this claim is that the Plaintiff claims that she "refused to remain silent" about the policy and "called the matter to the attention of the defendants." Giving the Plaintiff the benefit of the doubt, as we must in motions for summary judgment, she does allege termination because of her refusal to remain silent regarding activities which are illegal or against public policy. However, such allegations must be substantiated to some degree. Not only is there no evidence regarding the policies by River Park as being illegal or against public policy, there is no proof that this was why River Park requested that she not be assigned to that facility or that Southeastern Emergency Services, P.C. was complicit in River Park's activities. Without more than mere assertions by Plaintiff, the claim must fail.

> We agree with the rationale and holding of the trial court.

*Id.* at *7-8. In ***River Park***, then, the nurse practitioner's unsupported belief that the hospital's activities were "illegal and ill-advised" and against "public policy" was insufficient to establish a statutory retaliatory discharge claim. *Id.* at *8. On the other hand, in ***White v. Fort Sanders-Park West Medical Center***, No. E2006-00330-COA-R3-CV, 2007 WL 241024, at *4 (Tenn. Ct. App. Jan. 29, 2007), a nurse presented sufficient evidence of "illegal activity" to withstand a motion for summary judgment. The nurse was fired from a hospital after complaining about understaffing and

unsafe working conditions, and she filed a retaliatory discharge action citing specific state regulations that required "adequate numbers" of nurses to provide needed care to patients. *Id.* The Court of Appeals cited the *Mason* Court's statement that the whistleblower statute applies if the employee had reasonable cause to believe a law, regulation, or rule was violated and reported it in good faith, and held that a genuine issue of fact existed with regard to whether the employer engaged in illegal activities. *Id.*

In *Collins v. AmSouth Bank*, 241 S.W.3d at 881-82, a bank employee was fired after a heated argument with her supervisor about placing money in a night deposit drop box. The bank employee filed a suit for retaliatory discharge against the bank and claimed that she was unsure of whether her supervisor violated federal banking regulations and bank policy by instructing her to put the cash in the night deposit drop box. *Id.* at 882. The employee cited a federal statute and regulation as support for her belief that the supervisor's request was illegal. *Id.* at 885-86. However, on appeal, we found that the statute and regulation provided "no legal basis" for the employee's assertion that the supervisor's actions were illegal, and we affirmed summary judgment in favor of the bank. *Id.* at 886, n.4.

In *Voss v. Shelter Mutual Insurance Co.*, 958 S.W.2d 342, 343 (Tenn. Ct. App. 1997), an insurance agent was fired after he called a member of the Tennessee Insurance Department and complained about his employer raising insurance rates and promoting an employee shortly before retirement so that he would receive more retirement benefits. The agent also reported that "company management [was] looking out only for themselves, not the policyholders." *Id.* at 345. The Court of Appeals found that "the activities thus reported in no way could be considered 'illegal activities' within the meaning of the statute." *Id.* Accordingly, the Court held that the trial court should have granted a directed verdict to the employer because the plaintiff failed to establish a prima facie case under Tennessee Code Annotated section 50-1-304. *Id.* at 346.

In several other statutory retaliatory discharge cases, we have affirmed summary judgment in favor of employers where employees were terminated after making complaints against their employers for activities that did not rise to the level of "illegal activities" under the statute. *See, e.g.*, *Bridgestone/Firestone, Inc. v. Orr*, No. M2006-2638-COA-R3-CV, 2008 WL 80200, at *4 (Tenn. Ct. App. W.S. Jan. 7, 2008) *perm. app. denied* (Tenn. Jun. 23, 2008) (finding that the employee's refusal to remain silent about tire failures did not involve illegal activities); *Forrest v. City of Ridgetop*, No. M2002-01176-COA-R3-CV, 2003 WL 21954195, at *6 (Tenn. Ct. App. Aug. 15, 2003) (stating that a police officer's complaints regarding his employer's practices such as "ticket fixing" did not constitute illegal activities within the meaning of the statute); *Robins v. Flagship Airlines, Inc.*, 956 S.W.2d 4, 6-7 (Tenn. Ct. App. 1997) (concluding that an airline employee's report to the company president regarding perceived problems with the maintenance department did "not even approach the subject of statutory or regulatory violations").

We have considered the evidence in the light most favorable to Plaintiff. However, Plaintiff has failed to demonstrate that he reported illegal activities within the meaning of the statute. Plaintiff did not establish this essential element of his statutory retaliatory discharge claim simply by stating

his belief that Mr. Misker's actions were wrong. Therefore, the trial court properly granted summary judgment to Henry County.[4] We need not consider the issue presented by Henry County regarding whether an exclusive causal relationship existed between Plaintiff's complaint and his termination.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Daniel Sanders, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[4] We note that Plaintiff's brief on appeal also discusses his report to Mayor Greer regarding the tires and the underwear. However, Plaintiff alleged in his complaint that the sole reason for his termination was his report regarding the emails, and he also testified by deposition that he believed he was terminated solely for reporting the emails. In any event, Plaintiff's complaint to Mayor Greer regarding these issues would not support a claim for retaliatory discharge for the same reasons discussed regarding the emails. Plaintiff did not demonstrate that he refused to participate in or remain silent about "illegal activities" within the meaning of Tennessee Code Annotated section 50-1-304.