FILED
03/26/2025
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 22, 2024 Session[1]

## HEATHER SMITH v. BLUECROSS BLUESHIELD OF TENNESSEE

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Hamilton County**
**No. 21-0938  Jeffrey M. Atherton, Chancellor**

———————————————————

**No. E2022-01058-SC-R11-CV**

———————————————————

SARAH K. CAMPBELL, J., concurring.

I join in full the majority's opinion holding that the right to petition in the Tennessee Constitution cannot provide the basis for a retaliatory discharge claim against private employers. I write separately to suggest that, in an appropriate case, we should reconsider whether the Court is the correct entity to create public policy exceptions to the employment-at-will doctrine.

Under the employment-at-will doctrine, "employment for an indefinite period of time may be terminated by either the employer or the employee at any time, for any reason, or for no reason at all." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015). This doctrine is a notable break from English common law, which presumed that a term of employment was one year unless otherwise specified. 1 William Blackstone, *Commentaries* *413. But many state courts had recognized the employment-at-will doctrine by the late nineteenth century. *See, e.g.*, *Haney v. Caldwell*, 35 Ark. 156, 168–69 (1879); *E. Line & Red River R.R. v. Scott*, 10 S.W. 99, 102 (Tex. 1888); *Martin v. N.Y. Life Ins. Co.*, 42 N.E. 416, 417 (N.Y. 1895).

The Tennessee Supreme Court first recognized the employment-at-will doctrine in 1884 in a case involving a claim for tortious interference. *See Payne v. W. & Atl. R.R.*, 81 Tenn. 507, 518 (1884), *overruled on other grounds by Hutton v. Watters*, 132 Tenn. 527 (Tenn. 1915). To resolve that claim, the Court considered whether it was lawful for the defendant to threaten his employees with termination if they conducted business with the plaintiff. *Id.* at 517–20. Elaborating on the employment-at-will doctrine, the Court stated that "men must be left, without interference to buy and sell where they please, and to

---

[1] Oral argument was heard in this case at Tennessee Tech University in Cookeville, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

discharge or retain employes at will for good cause or for no cause, or even for bad cause without thereby being guilty of an unlawful act per se." *Id.* at 518.

In the mid-twentieth century, however, courts began creating public policy exceptions to the employment-at-will doctrine. *See, e.g.*, *Petermann v. Int'l Bhd. of Teamsters*, 344 P.2d 25, 27 (Cal. Dist. Ct. App. 1959); *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973). Tennessee courts were initially critical of such exceptions. In *Whittaker v. Care-More, Inc.*, for example, the Tennessee Court of Appeals acknowledged that the employment-at-will doctrine faced increasing criticism and that many courts had adopted exceptions to it. 621 S.W.2d 395, 396 (Tenn. Ct. App. 1981). Even so, the court declared that the employment-at-will doctrine was "still viable in Tennessee, except where modified by statute." *Id.* Concerned that "weakening" of the doctrine could stem the "influx of new businesses" into Tennessee, the court reasoned that "any substantial change" in the employment-at-will doctrine should be adopted only after considering "its effect on the commerce of this state." *Id.* at 396–97.

Notwithstanding *Whittaker*'s caution, this Court adopted a public policy exception in *Clanton v. Cain-Sloan Co.* 677 S.W.2d 441 (Tenn. 1984). There, an employee filed a workers' compensation claim after she was injured on the job. *Id.* at 442. The day after the claim was settled, the employee was terminated. *Id.* The Court concluded that an exception to the general rule of at-will employment exists when an employee is terminated for exercising her rights under the workers' compensation laws. *Id.* at 444–45. Although the workers' compensation statute did not expressly create a cause of action for retaliatory discharge at that time, the Court found such a cause of action is "necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature." *Id.* at 445.

This Court further opened the door to public policy exceptions in *Chism v. Mid-South Milling Co.* 762 S.W.2d 552 (Tenn. 1988). In *Chism*, this Court reiterated that retaliatory discharge claims are available when an employer violates a clear public policy as evidenced by an unambiguous constitutional, statutory, or regulatory provision. *Id.* at 556. The Court provided several examples of "clearly defined public policies" that warrant enforcement through retaliatory discharge claims. *Id.* It suggested that retaliatory discharge claims should be allowed when an employee is terminated for refusing to commit perjury, for obeying a lawful subpoena, for testifying truthfully in litigation, for honoring a subpoena to jury duty, for not seeking to be excused from jury duty, or for refusing to falsify records or to acquiesce in the mislabeling of products. *Id.* But because "[n]o comparable situation [was] presented" in *Chism*, the Court declined to allow a retaliatory discharge claim in that case. *Id.*

As it turns out, determining when a public policy is "clear" enough to warrant an exception from the employment-at-will doctrine is not always easy. Tennessee courts have

allowed employees to bring retaliatory discharge claims when they were discharged for violating *some* vehicle safety regulations, but not for violating others. *Compare Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823–25 (Tenn. 1994) (adopting public policy exception where cause of discharge was refusal to violate the Tennessee Motor Carriers Act), *with Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 540, 544 (Tenn. 1989) (rejecting exception where cause of discharge included employees' resistance to violating vehicle safety regulations), *and Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 530–33 (Tenn. Ct. App. 2006) (rejecting exception where cause of discharge was refusal to violate a regulation requiring the truck to carry an original cab card showing registration). Our courts have also allowed retaliatory discharge claims when a *current* employee is discharged for exercising his workers' compensation rights, but not when a *prospective* employee is rejected based on her workers' compensation claim against a former employer. *Compare Clanton*, 677 S.W.2d at 443–45 (current employee), *with Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 804, 807 (Tenn. 2015) (prospective employee). And although *Chism* suggested that a public policy exception should exist when an employee is discharged for obeying a lawful subpoena, 762 S.W.2d at 556, this Court later declined to adopt an exception when an employee was discharged for testifying under subpoena in a former coworker's unemployment compensation hearing, *see Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922–23 (Tenn. 1990).

There are undoubtedly situations in which the termination of an employee would violate public policy. But courts are not well-equipped to determine which public policies are sufficiently clear and important to warrant the strong remedy of a retaliatory discharge claim. As we explained in *Watson*, the legislature is far better suited for that task. 789 S.W.2d at 540 (cautioning that public policy exceptions should be adopted "only in the most extraordinary circumstances" because public policy "is clearly a legislative function"); *see also, e.g.*, *Smith v. Gore*, 728 S.W.2d 738, 747 (Tenn. 1987) (explaining that "questions of policy are for the determination of the legislature, and not for the courts," lest courts act as "lawmaking bodies in usurpation of the powers of the legislature" (quoting *Cavender v. Hewitt*, 239 S.W. 767, 768 (Tenn. 1922))).

Indeed, the legislature has already enacted a number of statutes allowing retaliatory discharge claims in certain situations. The Tennessee Human Rights Act, for example, prohibits employers from discharging employees because of their race, creed, color, religion, sex, age, or national origin and creates a cause of action for employees terminated in violation of the Act. Tenn. Code Ann. § 4-21-401(a)(1), (d)(5) (2021). The Tennessee Disability Act protects employees from being discharged because of physical, mental, or visual disabilities. *Id*. § 8-50-103(c)(1), (c)(2) (2024). The Occupational Safety and Health Act and the Whistleblower Act ensure that employees can report unlawful activity without fear of reprisal. *Id.* § 50-3-106(7), (8) (2022) (prohibiting an employer from terminating an employee for filing a complaint, instituting a proceeding, or testifying in a proceeding against an employer for an occupational safety and health violation); *id*. § 50-1-304(c)(1)

(2022) (prohibiting an employer from terminating an employee for refusing to participate in or remain silent about illegal activities). Still other statutes allow employees to sue if they are discharged for missing work due to jury service, *id*. § 22-4-106(d)(2)(A) (2021), or for filing a workers' compensation claim, *id.* § 9-8-310(b) (2020). The legislature clearly knows how to provide a retaliatory discharge cause of action when it wants to.

No one in this case has asked us to halt the development of public policy exceptions altogether. But we should consider that question in an appropriate case. In my view, there are strong reasons to leave the further development of public policy exceptions to the legislature.

_____

SARAH K. CAMPBELL, JUSTICE